BITUMINOUS CASUALTY CORPORATION, Plaintiff-Appellant and Cross-Appellee v. IOWA NATIONAL MUTUAL INSURANCE COMPANY *et al.*, Defendants-Appellees and Cross-Appellants.

Third District   No. 3—84—0431

Opinion filed March 19, 1985.—Rehearing denied June 4, 1985.

Murvel Pretorius, Jr., and Paul P. Gilfillan, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellant.

Jordan A. Fifield and Kenneth M. Snodgrass, Jr., both of Goldsworthy & Fifield, of Peoria, for appellees.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Bituminous Casualty Corporation (Bituminous) brought the instant complaint for declaratory judgment against Iowa National Mutual Insurance Company (Iowa National). The circuit court dismissed the complaint with prejudice. Iowa National counterclaimed against Bituminous for fees and costs under an assignment of rights from the parties' mutual insured, Pelco Structures, Inc. (Pelco). The counterclaim was also dismissed. We affirm on both counts.

Pelco is a third-party defendant in a personal injury suit brought in Cook County. Bituminous is Pelco's primary insurer for occurrences of the type at issue in that suit. The applicable policy has a $100,000 coverage limit. Iowa National issued an umbrella excess liability policy to Pelco with a $300,000 coverage limit. The duty to defend contained in the Bituminous policy reads as follows:

> "II. Defense, Settlement, Supplementary Payments: As respects the insurance afforded by the other terms of this policy the company shall:
>
> (a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; * * *
>
> (c) pay all expenses incurred by the company, all costs taxed

against the insured in any such proceeding or suit and interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(d) reimburse the insured for all reasonable expenses, other than loss of earnings; incurred at the company's request."

Iowa National's policy also contains a duty to defend clause. The underlying insurance referred to therein is the Bituminous policy.

"When underlying insurance does apply to an occurrence:

This policy does not apply to defense, investigation, settlement or legal expenses covered by underlying insurance, but the company shall have the right and opportunity to associate with the insured in the defense and control of any claim or proceeding reasonably likely to involve the company. In such event the insured and the company shall cooperate fully.

In the event that the limits of liability of the underlying insurance listed in the schedule of underlying insurance are exhausted by occurrence, the company shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the insured resulting from the same occurrence, but only where this policy applies and is immediately in excess of such listed underlying insurance without intervening excess insurance with another insurer."

Bituminous undertook the defense of Pelco upon the filing of the action against it. As the potential exposure of the two insurers became apparent, Iowa National took charge of directing the course of Pelco's defense. Bituminous continued to assume all costs of defending.

Realizing that its policy limits would probably be exhausted by the suit, Bituminous tendered the defense of the suit to Iowa National. The policy limit of $100,000 was tendered toward the settlement of the claim. Iowa National refused. Its position was and continues to be that as primary insurer, Bituminous has a nondelegable duty to defend Pelco against all claims until its policy limits have been exhausted. Consequently, Bituminous would have no standing to call on Iowa National to defend under the terms of the latter's policy.

Bituminous' brief is premised on a theory of equitable subrogation (also known as equitable apportionment). The gist of this theory is that both insurers have obligated themselves to defend their mutual insured. In a situation where the unliquidated claim clearly exceeds the primary insurer's policy limits, the vigorous defense of the action inures to the principal benefit of the excess insurer. Since the primary insurer is solely responsible for underwriting the costs of defense, the excess in-

surer derives the benefit of protection of its policy limits without assuming any of the costs. Thus, it would be inequitable to prevent the primary insurer from shifting some portion of this cost to the excess insurer. While Illinois has not faced this doctrine head-on, a few jurisdictions have accepted it. See, *e.g., Celina Mutual Insurance Co. v. Citizens Insurance Co. of America* (1984), 133 Mich. App. 655, 349 N.W.2d 547; *Aetna Casualty & Surety Co. v. Certain Underwriters at Lloyds* (1976), 56 Cal. App. 3d 791, 129 Cal. Rptr. 47.

■ We are unable, however, to review this contention on its merits. Bituminous' complaint does not request that the court apportion the costs of defense between the insurers. Rather, the prayer for relief requests that the court enter an order declaring that Iowa National "is obligated to assume responsibility for the settlement and defense of any *** claims against Pelco arising out of [the Cook County suit]." Bituminous' memorandum in opposition to defendant's motion to dismiss framed the issue as follows:

> "Thus, the issue to be presented by this complaint *** is when a primary insurer's duty to defend terminates, and/or when an excess insurer's duty to defend begins."

While the equitable subrogation theory appears in passing in Bituminous' memorandum, it is evident that the only theory raised by the pleadings is that of shifting the costs of defense to Iowa National. Accordingly, we decline to entertain a new claim or theory which was not properly raised before the trial court. *Baker v. Collins* (1963), 29 Ill. 2d 410, 194 N.E.2d 353.

■ We are thus faced with the propriety of the dismissal with prejudice of the complaint under the theory originally proposed by Bituminous. Initially, we reject the suggestion of the trial court and Iowa National that this case is controlled by *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245. There, the sole insurer tendered the policy limits to its insured and purported to withdraw from its defense of a claim. The supreme court, in construing the relative breadth of the duties to indemnify and defend, concluded that the latter extended beyond the former. The insurer's duty to defend was held to continue in spite of the exhaustion of policy limits. Here, there is no question of the insured being denied a defense. Instead, we are concerned only with the question of which of two insurer's duties to defend applies under the relevant policies.

As in any insurance case, the principal source of the rights and duties of the parties is the policy language. Here, the clauses quoted above define the duties of Bituminous and Iowa National to defend the action against Pelco.

The duty undertaken by Bituminous is simple and straightforward. The obligations to "defend any proceedings *** pay all expenses incurred by the company" and "reimburse the insured for all reasonable expenses" are in no way made less absolute by the existence of other insurance. The attempt to call on Iowa National to defend under the terms of its policy is ineffective, even assuming the benefits of the Bituminous to be "exhausted" by the tender of policy limits to Iowa National. Iowa National's duty to defend runs only to Pelco. As far as Bituminous is concerned, its duty to defend is no different than if there were no excess insurance policy at all.

A reading of 7C J. Appleman, Insurance Law & Practice sec. 4682, at 30 (Berdal ed. 1979), clarifies this issue:

"Nevertheless, some courts appear to have difficulty in recognizing the distinction between the fact that a duty exists upon the part of the excess insurer to provide a defense to the insured and the fact that only the insured, or its representative, can call upon the excess insurer for the performance of this duty. And the insured can do so only when the applicable limits of the primary insurer are exhausted, in accordance with the terms of the policy, or possibly under certain circumstances, threatened to be exhausted. It should be clear that third parties to the contract have no standing to make such a demand."

Without expressing any opinion on the subject of equitable subrogation, we find that Bituminous has no right to deny the clear terms of its own policy based on language from a policy to which it is not a party.

As to Iowa National's counterclaim, we agree with the trial court that no relief should be granted. The decision below was premised on a lack of bad faith on Bituminous' part in bringing the instant action.

This position is essentially correct. Had Bituminous chosen not to defend at all, thus forcing Pelco or Iowa National to sue, we might view the case differently. However, the record shows that Bituminous has continued to provide a defense in the underlying action. The instant action is not a bad faith or vexatious attempt to avoid contractual obligations. Rather, Bituminous simply requests a declaration of the duties of multiple parties within the proper scope of section 2—701 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—701). Accordingly, we affirm the judgment of the circuit court of Peoria County.

Affirmed.

BARRY and SCOTT, JJ., concur.