Docket No. 89412–Agenda 32–September 2000.

COUNTRY MUTUAL INSURANCE COMPANY, Appellant, v. TEACHERS INSURANCE COMPANY 
et al
. (Teachers

 Insurance Company, Appellee).

Opinion filed March 22, 2001.

JUSTICE McMORROW delivered the opinion of the court:

The issue presented to us in this appeal is whether plaintiff, Country Mutual Insurance Company (Country Mutual), the insurer of a school board, or defendant Teachers Insurance Company (Teachers), the insurer of a teacher, is primarily liable for damages resulting from an automobile accident involving the teacher which occurred while the teacher was acting within the scope of her employment. The appellate court held that the public policy expressed in section 10–20.20 of the School Code (105 ILCS 5/10–20.20 (West 1998)) required the school board’s insurer to provide primary coverage and granted summary judgment to Teachers. 312 Ill. App. 3d 566. For the reasons that follow, we reverse the judgment of the appellate court granting summary judgment to Teachers and remand the cause to that court for further proceedings.

BACKGROUND

The facts in this case are not in dispute. On December 8, 1995, Jo Chapman, a teacher at Sandoval Community High School District No. 501 (Sandoval), was driving her automobile while acting within the scope of her employment. Jamie Johnston, a student at Sandoval, was a passenger in the vehicle. Chapman’s vehicle slid on an icy roadway and ran off the road, allegedly injuring Johnston. Johnston subsequently brought suit against Chapman and Sandoval, claiming that Chapman’s negligence in driving the vehicle resulted in Johnston’s injuries.

At the time of the accident, Chapman’s vehicle was insured by defendant Teachers Insurance Company (Teachers), with Chapman as the named insured under the policy. Teachers’ insurance policy with Chapman provides that Teachers will pay damages which Chapman becomes liable to pay because of bodily injury to others and that Teachers will defend any suit brought against Chapman for such damages.

Sandoval was insured by plaintiff, Country Mutual Insurance Company (Country Mutual), on a business automobile insurance policy. Country Mutual’s policy with Sandoval provides:

“It is agreed that such insurance as is afforded by the policy for bodily injury liability and for property damages liability with respect to an insured automobile is extended to insure any member of the Board of Education or any employee, teacher, volunteer, personnel or any student teacher of the named insured, but only while acting within the course or scope of his duties, as such, or under the direction of the Board of Education, subject to the following provisions:

* * *

2. The insurance afforded by this endorsement with respect to any hired or non-owned automobile shall be excess insurance over any other valid and collectible insurance.”

On August 20, 1995, Country Mutual issued an endorsement adding to the “who is insured” portion of its policy with Sandoval, which states:

“Any employee of
 yours
 is an
 insured
 while using a covered 
auto you
 don’t own, hire or borrow in 
your
 business or your personal affairs.” (Emphasis in original.)

Chapman tendered the claim that Johnston filed against her to Teachers. Teachers then tendered the defense to Country Mutual. Teachers argued that Country Mutual’s policy provided primary coverage for Chapman’s accident. In response, Country Mutual filed suit for declaratory judgment in the circuit court of Jefferson County, naming Teachers, Ruth Johnston, Jo Chapman and Sandoval as defendants.
(footnote: 1) Country Mutual alleged that its policy does not provide primary coverage and that it does not owe a duty to defend Chapman in the action against her. Teachers answered Country Mutual’s complaint for declaratory judgment and filed a counterclaim against Country Mutual for declaratory judgment, alleging that Country Mutual’s insurance policy did provide primary coverage for the accident. Teachers requested that Country Mutual be ordered to reimburse it for all amounts paid as a result of the underlying claim, as well as costs of the defense of the claim.

Both Teachers and Country Mutual filed motions for summary judgment. In its motion for summary judgment, Country Mutual contended that: (1) the unambiguous language of the policy that it issued to Sandoval establishes that it provides only excess coverage, rather than primary coverage, for Chapman’s accident; and (2) the policy that Teachers issued to Chapman provides primary coverage. Country Mutual also argued that Illinois law sets forth the general principle that the automobile liability policy of the owner of a vehicle generally provides primary coverage.

Teachers, in its motion for summary judgment, argued that: (1) Country Mutual is obligated to indemnify Chapman pursuant to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2–302 (West 1998) (stating that a local public entity may elect to indemnify its employee for court costs, a judgment, and/or a settlement stemming from an action brought against that employee that arose while the employee was acting within the scope of his or her employment)); and (2) the August 1995 endorsement to the policy that Country Mutual issued to Sandoval establishes that Country Mutual is the primary carrier for Chapman’s accident.

The circuit court of Jefferson County found that Teachers’ insurance policy provided primary coverage for the accident and granted Country Mutual’s summary judgment motion. Teachers then filed a motion to reconsider. In this motion, Teachers repeated the arguments that it made in its motion for summary judgment. Teachers also argued for the first time that section 10–20.20 of the School Code (105 ILCS 5/10–20.20 (West 1998)) establishes that Sandoval had an obligation to indemnify and protect Chapman. Country Mutual filed a brief in response to Teachers’ motion to reconsider, contending that Teachers’ argument regarding section 10–20.20 did not address the issue before the court, as it failed to consider the language in the insurance policies to determine which policy provides primary coverage. Country Mutual also repeated its argument that the language in the policies provides that Teachers’ policy is primary.

The circuit court denied Teachers’ motion to reconsider. In doing so, the court relied on 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998), to find that the insurer of a vehicle is responsible to provide primary automobile liability coverage when the vehicle is involved in a loss. Teachers appealed.

On appeal, Teachers argued that Sandoval is obligated by the School Code (105 ILCS 5/1–1 
et seq.
 (West 1998)) and the Tort Immunity Act (745 ILCS 10/2–301 (West 1998)) to indemnify and defend the action brought against Chapman, regardless of the insurance policy issued to Chapman by Teachers. The appellate court agreed that, pursuant to section 10–20.20 of the School Code, Sandoval was statutorily obligated to defend and indemnify Chapman or her personal insurer for the claim, pursuant to section 10–20.20 of the School Code. The court then held that, based on the public policy expressed in section 10–20.20, Country Mutual’s insurance policy provided primary coverage for the claim. Accordingly, the court reversed the summary judgment entered in favor of Country Mutual and entered summary judgment in favor of Teachers. 312 Ill. App. 3d 566. We granted Country Mutual’s petition for leave to appeal. 177 Ill. 2d R. 315(a).

ANALYSIS

An insurance policy is a contract between an insurer and an insured (
Copley v. Pekin Insurance Co.
, 111 Ill. 2d 76, 85 (1986)), and the rights and obligations of an insurer are primarily determined by the terms of that contract (
Bituminous Casualty Corp. v. Iowa National Mutual Insurance Co.
, 132 Ill. App. 3d 868 (1985)). When rendering its judgment in this case, however, the appellate court did not base its decision on the terms of Country Mutual’s policy or Teachers’ policy when determining which insurer is primarily liable for Chapman’s accident. Rather, the court relied exclusively on the School Code and considered only the parties’ arguments that related to the School Code. Specifically, the court determined that it could not base its decision on the insurance policies at issue in this case because to construe Country Mutual’s policy as providing only excess coverage for Chapman’s accident would be contrary to public policy. See, 
e.g.
, 
Illinois Farmers Insurance Co. v. Cisco
, 178 Ill. 2d 386, 392 (1997), citing 
Menke v. Country Mutual Insurance Co.
, 78 Ill. 2d 420, 423 (1980) (the terms of an insurance policy are to be applied as written unless those terms contravene public policy). The court found this public policy in sections 10–20 and 10–20.20 of the School Code.

Section 10–20 of the School Code, entitled “Powers of school board,” states:

“The school board has the powers enumerated in the Sections of this Article following this Section. This enumeration of powers is not exclusive, but the board may exercise all other powers not inconsistent with this Act that may be requisite or proper for the maintenance, operation, and development of any school or schools under the jurisdiction of the board. This grant of powers does not release a school board from any duty imposed upon it by this Act or any other law.” 105 ILCS 5/10–20 (West 1998).

Section 10–20.20 states:

“To indemnify and protect school districts, members of school boards, employees *** against civil rights damage claims and suits, constitutional rights damage claims and suits and death and bodily injury and property damage claims and suits, including defense thereof, when damages are sought for negligent or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board.” 105 ILCS 5/10–20.20 (West 1998).

Prior to 1996, section 10–20 set forth the “duties,” rather than “powers” of school boards, providing that “[t]he school board has the 
duties
 enumerated in the Sections following this Section and preceding Section 10–21.” (Emphasis added.) 105 ILCS 5/10–20 (West 1994). Section 10–20 was amended in 1996 to change the word “duties” to “powers.” See 105 ILCS 5/10–20 (West 1996), amended by Pub. Act No. 89–159, eff. January 1, 1996.

 The appellate court held that the1996 amendment to section 10–20 did not change a school district’s mandatory duty to indemnify and defend its employees. The court concluded that the legislative history of the 1996 amendment established that “the purpose of the amendment was not to do away with any duties owed by school districts but to expand the powers of school districts to include any powers necessary and proper for the maintenance, operation, and development of schools, provided those powers are not in conflict with any other provisions of the School Code.” 312 Ill. App. 3d at 571. Thus, the appellate court found that sections 10–20 and 10–20.20 express a public policy that a school board is required to indemnify its employees for damage claims due to negligence that occurs during the scope of employment.

On appeal to this court, the parties dispute the meaning of section 10–20.20. Country Mutual contends that section 10–20.20 does not place a mandatory duty on school boards to indemnify their employees for damages claims due to negligence that occur in the scope of employment. Country Mutual argues that the change from “duties” to “powers” in section 10–20 eliminates a school board’s 
duty
 to indemnify its employees and gives school boards the 
authority
 to indemnify. Conversely, Teachers alleges that the legislature did not intend to remove a school board’s duty to indemnify its employees. Teachers argues that the appellate court was correct in holding that the change from “duties” to “powers” merely expanded the powers of school boards to include any powers necessary and proper for the maintenance, operation and development of schools. Thus, Teachers contends that school boards have a duty to indemnify their employees for damage claims due to negligence that occurs in the scope of employment.

“The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature.” 
Kunkel v. Walton
, 179 Ill. 2d 519, 533 (1997). Where a statute’s meaning is unclear from the statutory language, the court may examine the statute’s legislative history. 
Kunkel
, 179 Ill. 2d at 534.

According to Black’s Law Dictionary, the term “duty” is defined as “[a]ny action, performance, task, or observance owed by a person in an official or fiduciary capacity.” Black’s Law Dictionary 522 (7th ed. 1999). The term “power,” in contrast, is defined as “[t]he ability to act or not act.” Black’s Law Dictionary 1189 (7th ed. 1999). Given these definitions, it initially appears that when the legislature changed the word “duties” to “powers,” it removed a school board’s obligation to indemnify its employees for damage claims due to negligence and, instead, merely gave school boards the ability to indemnify them. However, when the legislature amended section 10–20 to change the word “duties” to “powers,” it also added a sentence to the section that provides: “This grant of powers does not release a school board from any duty imposed upon it by this Act or any other law.” 105 ILCS 5/10–20 (West 1998). Thus, while the legislature arguably seemed to have removed a school board’s duty to indemnify by changing the word “duties” to “powers,” it also appears to have then reimposed that duty by adding that the school board is not “released” from any duty. We therefore turn to the legislative history of the l996 amendment to section 10–20 for guidance in determining the legislature’s intent.

Our examination of the legislative debates of the bill that amended section 10–20 convinces us that the legislature did not intend to eliminate or change a school district’s duty to indemnify and defend its employees when it changed the word “duties” to “powers.” When discussing the bill that amended section 10–20, Senator Klemm noted that the bill

“gives school boards the authority to exercise all that’s necessary and proper for the maintenance and operation and development of their schools, provided that this authority is not in conflict with any provision of the School Code, in that it clarifies that this authority does not release school districts from any duty imposed by–by the law right now.” 89th Ill. Gen. Assem., Senate Proceedings, May 24, 1995, at 16 (statements of Senator Klemm).

As the senator spoke, “the law right now” stated that school districts had a duty to indemnify and defend their employees for damage claims due to negligence occurring within the scope of employment. Similarly, during another legislative debate, Representative Cowlishaw explained the purpose of adding the sentence in section 10–20 that reads, “This grant of powers does not release a school board from any duty imposed upon it by the Act or any other law.” She stated that “there were some concerns about our being very careful that school boards realized they still had to do everything that the School Code requires *** [and] when that sentence was added that’s when all opposition was removed.” 89th Ill. Gen. Assem., House Proceedings, May 19, 1995, at 242 (statements of Representative Cowlishaw). Representative Cowlishaw also stated that

“In other words we give by this Bill, school boards the authority to exercise all powers necessary and proper, for the maintenance operation and development of schools, provided those powers are not in conflict with any provision of the School Code.” 89th Ill. Gen. Assem., House Proceedings, May 19, 1995, at 241 (statements of Representative Cowlishaw).

We believe the foregoing statements make clear that the legislature did not intend the 1996 amendment to remove a school district’s duty to indemnify and defend its employees. Instead, section 10–20 was amended for the purpose of providing school districts with greater authority. Thus, we hold that section 10–20.20 imposes a duty on school districts to indemnify and defend their employees for damage claims due to negligence that occurs in the scope of employment.

After the appellate court in the case at bar determined that the School Code expresses a public policy that school boards indemnify their employees for damage claims due to negligence that occurs in the scope of the employment, the court then held that this public policy would be contravened if Country Mutual’s insurance policy were to be construed as requiring only excess coverage. Accordingly, the appellate court held that, “despite the language in [Country Mutual’s] insurance policy,” which arguably states that it will provide only excess coverage in situations such as the one at bar, the court was required to construe that policy to afford primary coverage for Chapman’s accident. 312 Ill. App. 3d at 571. In support of this position, the appellate court relied on 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998).

In 
State Farm
, a car dealership customer was involved in an accident while test-driving the dealership’s vehicle. 
State Farm
, 182 Ill. 2d at 241. The driver’s insurance company, State Farm Mutual Automobile Insurance Company (State Farm), paid the damages that arose from the accident and subsequently submitted a claim to the dealership’s insurance carrier, Universal Underwriters Group (Universal), for reimbursement of those damages, claiming that the dealership’s carrier afforded primary coverage. The policy issued by Universal to the dealership stated that any “ ‘person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission’ ” was insured under the policy. 
State Farm
, 182 Ill. 2d at 242.

The parties disputed whether the driver was required by law to be an insured pursuant to the Universal policy and section 7–601 of the Illinois Vehicle Code. Section 7–601 provides that “ ‘[n]o person shall operate, register or maintain registration of, and no owner shall permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy.’ ” 
State Farm
, 182 Ill. 2d at 242-43, quoting 625 ILCS 5/7–601(a) (West 1996).

This court agreed with State Farm that Illinois law required a dealership’s liability policy to provide coverage for customers who test-drive the dealership’s vehicles. We noted that the Illinois Vehicle Code requires that an insurance policy “ ‘insure the person named therein 
and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.
’ ” (Emphasis in original.) 
State Farm
, 182 Ill. 2d at 244, quoting 625 ILCS 5/7–317 (West 1996). Thus, we found that a liability insurance policy must cover not only the named insured, but also any other person who uses the named insured’s vehicle with his or her permission. 
State Farm
, 182 Ill. 2d at 244.

We further rejected Universal’s argument that, even if its policy covered the accident, it provided only excess coverage according to the language of the policy. We stated:

“Even assuming, 
arguendo
, that Universal is correct in its interpretation of the language of its garage policy, to give effect to that language would violate the public policy of this state, as defined by the General Assembly in the [Illinois Vehicle] Code. As explained above, the Code mandates that the insurance policy issued by Universal provide omnibus coverage. In the absence of any statutory language qualifying that mandate, the statute must be construed to require primary coverage.” 
State Farm
, 182 Ill. 2d at 246.

The appellate court in the instant case relied on this language in holding that the public policy of Illinois required Country Mutual to provide primary coverage for Chapman’s accident. 312 Ill. App. 3d at 572. The appellate court erred when it relied on 
State Farm
, as that case is inapposite to the facts at bar.

Unlike 
State Farm
, the statute in question in the matter at bar does not involve insurance. Sections 10–20 and 10–20.20 address the duties of school boards. They do not pertain to insurance or insurance policies. In fact, nowhere in these portions of the School Code is a school board’s insurer mentioned. Thus, although sections 10–20 and 10–20.20 establish a public policy that 
school
 
boards
 indemnify their employees for accidents that arise while those employees are acting within the scope of their employment, nothing in those sections defines an insurance company’s duties. Simply stated, sections 10–20 and 10–20.20 do not establish a public policy that a school board’s 
insurer
 indemnify any employee. Unlike the situation in 
State Farm
, no public policy would be violated by giving effect to the language of both Country Mutual’s and Teachers’ insurance policies to determine which company is liable for primary coverage. To construe Country Mutual’s policy as excess would not contravene the public policy that a school board has a duty to indemnify its employees for accidents that arise in the scope of employment.

Therefore, while we agree with the appellate court’s conclusion that section 10–20.20 imposes a duty on school districts to indemnify their employees for accidents arising within the scope of employment, we do not agree with the appellate court’s ultimate determination that construing Country Mutual’s policy to provide only excess coverage for Chapman’s accident would contravene the public policy expressed in section 10–20.20. We therefore determine that the appellate court erred in holding that public policy demands that Country Mutual’s insurance policy be construed to provide primary coverage for Chapman’s accident. The decision of the appellate court granting summary judgment in favor of Teachers is reversed.

Because no controlling expression of public policy applies in the matter at bar, this case involves a strict contract dispute. The terms of the insurance contracts will therefore control which company is primarily liable for Chapman’s accident. As noted previously, the appellate court did not examine Country Mutual’s and Teachers’ insurance policies to determine which policy provided primary coverage for Chapman’s accident. Because this issue was not fully briefed to this court by both parties, or determined in the appellate court, we remand this cause to the appellate court for resolution of this issue. 
People v. Landwer
, 166 Ill. 2d 475, 499-500 (1995).

CONCLUSION

For the foregoing reasons, the judgment of the appellate court granting summary judgment in favor of Teachers is reversed. The cause is remanded to the appellate court for further proceedings consistent with this opinion.

Appellate court judgment reversed;

cause remanded.

FOOTNOTES
1:     
1
The action was later voluntarily dismissed against Sandoval.