ANTHONY ZIMMERMAN, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—99—0372

Opinion filed April 14, 2000.

Lawrence H. Hyman & Associates, of Chicago (Lawrence H. Hyman, of counsel), for appellant.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Hugh J. Doyle, of counsel), for appellee State Farm Mutual Automobile Insurance Company.

JUSTICE HARTMAN delivered the opinion of the court:

An automobile owned by defendants Jacoby and Patricia Battle was repossessed by plaintiff Anthony Zimmerman, who was injured in an accident while driving that vehicle. Zimmerman later sought a

declaratory judgment that the Battles' automobile insurance policy, issued by defendant State Farm Mutual Automobile Insurance Company (State Farm), afforded him coverage. The circuit court granted State Farm's motion for summary judgment, finding that Zimmerman did not have "permission" to use the Battles' automobile and, therefore, the policy did not provide coverage for his injuries. Zimmerman appeals.

On or before January 1, 1993, Jacoby and Patricia Battle purchased a 1993 Ford Escort station wagon, which they financed through Ford Motor Credit Company. The retail installment contract provided, in part:

> "If you are in default, a creditor may require you to pay at once the unpaid Amount Financed, the earned and unpaid part of the Finance Charge and all other amounts due under this contract. *He may also repossess (take back) the vehicle, too.* He may also take goods found in the vehicle when repossessed and hold them for you." (Emphasis added.)

After the Battles defaulted on their vehicle loan, Starlight Recovery (Starlight) repossessed their vehicle. Starlight is a small, family-run business located in Lake Village, Indiana, and is engaged in the business of repossessing automobiles for Ford Motor Credit Company.

Sometime after midnight, on October 18, 1994, Zimmerman, a Starlight employee, drove from Lake Village with Albert Bond, Starlight's owner, to the Battles' home in Summit, Illinois. Zimmerman and Bond drove in Bond's own vehicle. There, Zimmerman checked the vehicle identification number, cut a new key for the Battles' Escort and drove away in that vehicle, followed by Bond driving his own car. Zimmerman first drove the Battles' vehicle to the Summit police station and Bond notified police of the repossession. Zimmerman then drove the Battles' car to Ford's vehicle storage lot in Alsip, Illinois. Leaving his own automobile at the lot, Bond then drove with Zimmerman in the Battles' vehicle to another location, where they repossessed a van. With Bond following in the van, Zimmerman returned to Starlight in Indiana, where the contents of the Battles' vehicle were inventoried.

The following night, on October 19, 1994, Zimmerman returned to work at Starlight. From there, Zimmerman, with another Starlight employee, drove to Alsip, Illinois in the Battles' Escort; Bond, who was driving the van repossessed the night before, followed Zimmerman. The plan was to leave the van and the Battles' Escort at Ford's storage lot in Alsip; however, Bond decided that he and Zimmerman first would attempt to repossess a Lincoln located nearby. Zimmerman waited in the Battles' Escort as Bond attempted to repossess the

Lincoln. The Lincoln's alarm was activated as Bond drove it away, alerting the owner. While driving the Escort, Zimmerman followed Bond in the repossessed Lincoln. Someone in another vehicle then began to chase the Lincoln and the Escort. During the chase, the Battles' Escort, still driven by Zimmerman, was involved in a collision with the other vehicle, driven by an uninsured motorist. Zimmerman suffered severe injuries as a result of the accident.

At the time of Zimmerman's accident, the Battles' 1993 Escort was insured under an automobile insurance policy issued by State Farm to the Battles. The policy provided for uninsured and underinsured motorist coverage. As required under Illinois law, the policy also contained a provision that provided coverage for other persons driving the insured's vehicle with the permission of the insured. That clause specifically provided coverage to:

"1. the first *person*[, the policy holder,] named in the declarations;

2. his or her *spouse*;

3. their *relatives*; and

4. any other *person* while *occupying*:

a. *your* car[.] Such vehicle has to be used within the scope of the consent of *you* or *your spouse*." (Emphasis in original.)

Exercising an abundance of the ancient, but venerable, doctrine of "chutzpah," Zimmerman sought uninsured motorist coverage under the Battles' State Farm policy for injuries he suffered in the accident, based upon the theory that he had the Battles' consent to use their vehicle as it was being employed at the time of his accident. After State Farm denied Zimmerman's demand for coverage, he filed a declaratory judgment action seeking a judicial determination that his injuries were covered under the Battles' State Farm policy. Both parties moved for summary judgment, which the circuit court denied as to Zimmerman and granted as to State Farm. In so ruling, the court held:

"Apparently the Battle's [*sic*] were in default and Ford decided to 'take back' the car. The contract, in my opinion, does not imply permissive use of the vehicle; rather it simply gives Ford the right to repossess the vehicle. I do not view 'take back' and 'permissive use' as being the same. The sales contract could have easily been written to plainly give Ford the right to repossess and use the vehicle."

Zimmerman appeals the court's order granting summary judgment to State Farm.

Zimmerman contends that he was entitled to coverage under the policy's uninsured motorist provision because he had "permission" to drive the Battles' Escort. He claims that the retail sales contract that

the Battles initially signed bestowed that "permission" upon Ford Motor Credit Company to repossess the vehicle in the event of default. Zimmerman equates the language contained in the sales contract, giving Ford the right to repossess the vehicle, with "permission" to use that vehicle in other repossession activities conducted by Starlight.

State Farm counters that repossession of a vehicle, although allowed by law (810 ILCS 5/9—503 (West 1996)) and the retail sales contract, does not automatically occur with the consent or permission of the vehicle's owner. Accordingly, the mere existence of the repossession language contained in the sales contract does not establish that Ford, or its agent, was a permissive user of the vehicle for casualty insurance purposes.

■ The construction of an insurance policy and a determination of the rights and obligations of the parties to that policy are questions of law which are subject to *de novo* review. *Pekin Insurance Co. v. L.J. Shaw & Co.*, 291 Ill. App. 3d 888, 891, 684 N.E.2d 853 (1997). The instant case involves the issue of whether an individual repossessing an automobile not only is a permissive user of the subject automobile, but may use that vehicle in repossessing unrelated cars and yet invoke the insurance coverage of the first repossessed vehicle for purposes of furthering the repossessor's own benefit.

■ Illinois courts follow the "initial permission" rule: if the named insured has initially given permission to another to use the insured vehicle, departure from the authorized use does not terminate the initial permission. *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill. 2d 333, 341, 297 N.E.2d 163 (1973). The public policy behind such a rule is based on the theory that the insurance contract is as much for the benefit of the public as it is for the insured and, therefore, it is undesirable to allow litigation as to the details of the permission and use. *Maryland Casualty Co.*, 54 Ill. 2d at 342. Accordingly, once initial permission has been granted by the named insured, " 'coverage is fixed, barring theft or the like.' " *Maryland Casualty Co.*, 54 Ill. 2d at 342, quoting *Odolecki v. Hartford Accident & Indemnity Co.*, 55 N.J. 542, 550, 264 A.2d 38, 42 (1970); see also *United States Fidelity & Guaranty Co. v. McManus*, 64 Ill. 2d 239, 356 N.E.2d 78 (1976). When the named insured of a policy which contains a clause extending liability coverage to those driving the covered automobile with the insured's consent gives consent to another, any third person allowed to drive the insured vehicle by the initial permittee is likewise covered. *Harry W. Kuhn, Inc. v. State Farm Mutual Automobile Insurance Co.*, 201 Ill. App. 3d 395, 400-01, 559 N.E.2d 45 (1990).

■ The threshold consideration in the case *sub judice* is whether the Battles, by signing the retail sales contract for purchase of their

automobile, gave initial consent to Ford Motor Credit Company to use their 1993 Escort in furtherance of its business or that of its agent. Clearly, they did not.

There is no dispute that the Battles entered into a retail sales contract with Ford Motor Credit Company. That contract did not state that the Battles were "consenting" or giving "permission" to Ford Motor Credit Company to use their automobile in the event of a default. Rather, the retail sales contract provided, in the event of the Battles' default on their loan, that Ford Motor Credit Company "may *** repossess (take back) the vehicle." This language merely recognizes the possibility of repossession; it does not give Ford Motor Credit Company "permission" to use the vehicle in furtherance of its own repossession interests not involving the Battles' vehicle. On the contrary, the act of repossession presupposes that the owners are not giving, nor are they required to give, their permission for the taking of their vehicle.

In the event of a default, a secured creditor has "no need to secure the permission" of the debtor to take possession; a secured party on default clearly has "the right to take possession of the property of its debtor without judicial process." *Elliot v. Villa Park Trust & Savings Bank*, 63 Ill. App. 3d 714, 716, 380 N.E.2d 507 (1978). A repossession "by its very existence, presupposes that the defaulting party did not consent." *Census Federal Credit Union v. Wann*, 403 N.E.2d 348, 351 (Ind. App. 1980). Had the defaulting party consented, "no statutory authority would be required for a secured party to repossess, with or without judicial process." *Census Federal Credit Union*, 403 N.E.2d at 351.

In the instant case, Ford Motor Credit Company's right to repossess the Battles' vehicle was premised upon a provision in the retail sales contract, which in turn was authorized by section 9—503 of the Uniform Commercial Code, granting certain creditors the right to repossess a vehicle without judicial process, the so-called "self help" rule. 810 ILCS 5/9—503 (West 1996) ("Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action"); see, *e.g., First National Bank v. Lachenmyer*, 131 Ill. App. 3d 914, 476 N.E.2d 755 (1985). At no time is it shown here that the Battles either expressly or impliedly consented to Ford Motor Credit Company's use of their vehicle.

Recognizing that a debtor in default likely would not hand over his or her vehicle to the creditor, this fact alone does not merit the imposition of casualty claim insurance coverage where none otherwise

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

exists. It follows that unless the Battles affirmatively gave permission to their creditor to use their vehicle, no subsequent user of the vehicle is entitled to coverage under the Battles' policy as a "permissive" user. Particularly, nothing in the language contained in the retail sales contract confers the Battles' consent or permission to Ford Motor Credit Company to "use" their vehicle in furtherance of repossession interests unrelated to the Battles, nor can its agent claim such consent or permission.

Finally, State Farm presents the argument that Zimmerman's use of the Battles' vehicle was equivalent to a tortious conversion. This contention was not specifically ruled upon by the circuit court and need not be addressed here.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.