STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. JEREMY FISHER *et al.*, Defendants-Appellants (Ruby Smith, Defendant[1]).

First District (5th Division)   No. 1—99—3396

Opinion filed August 25, 2000.—Rehearing denied September 22, 2000.

---

[1]Although the notice of appeal caption contains Ruby Smith's name and designates her as an appellant, the body of the notice contains no reference to her and she has not participated in this appeal.

Fraterrigo, Beranek, Feiereisel & Kasbohm, of Chicago (Francis P. Kasbohm, of counsel), for appellants.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Frank C. Stevens, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Ruby Smith (Smith) allegedly sustained injuries while entering Maurice Barnes' (Barnes) vehicle following its return from the valet parking service at Harrah's Casino Illinois (Harrah's). Smith filed suit against Barnes, Jeremy Fisher (Fisher), the valet driver employed by Harrah's, and Harrah's. Fisher and Harrah's tendered their defense

to Barnes' automobile insurance carrier, State Farm Mutual Automobile Insurance Company (State Farm).

State Farm later sought a declaratory judgment that it had no duty to defend or indemnify Fisher or Harrah's because there was no coverage under the "automobile business" exclusion clause (sometimes exclusion clause) in Barnes' insurance policy. The circuit court granted State Farm's motion for summary judgment, finding that the policy exclusion clause applied. Fisher and Harrah's allege State Farm's exclusion clause violates public policy, was ambiguous, and does not apply by its own terms because Fisher was acting as Barnes' agent. They seek reversal of the court's judgment, entry of summary judgment in their favor, and sanctions against State Farm.

On September 21, 1995, Barnes and Smith visited Harrah's in Joliet, Illinois. Upon arrival, Barnes, driving his 1985 Mercury Cougar, gave his vehicle to an employee of Harrah's valet service. When finished with their visit, Fisher retrieved Barnes' vehicle and returned it to the front of the casino. As Smith entered the passenger side, the vehicle rolled backward, causing her to be knocked to the ground. At the time of the accident, Barnes' vehicle was insured through State Farm.

In August 1997, Smith filed suit against Fisher, Harrah's, and Barnes, alleging that defendants negligently managed and operated the vehicle, failed to keep the vehicle under proper control, failed to apply the emergency brake upon returning the vehicle, and negligently left the motor running on an inclined driveway. Subsequently, Fisher and Harrah's tendered their defense to State Farm, which State Farm denied, alleging that it had no duty to defend Fisher and Harrah's under Barnes' insurance policy, based upon the exclusion clause in Barnes' policy that provided, in pertinent part:

"THERE IS NO COVERAGE:

    1. WHILE ANY VEHICLE INSURED UNDER THIS SECTION IS:

          \* \* \*

    b. BEING REPAIRED, SERVICED OR USED BY ANY PERSON EMPLOYED OR ENGAGED IN ANY WAY IN A CAR BUSINESS. This does not apply to:

        (1) you or your spouse

          \* \* \*

        (4) any agent, employee or partner of you, your spouse, any relative or such resident."

The policy defined a "car business" as "a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers."

In July 1998, State Farm sought a declaratory judgment that it had no duty to defend Fisher and Harrah's because of the excluded coverage. In September 1998, Fisher and Harrah's filed an answer and affirmative defense to State Farm's declaratory judgment complaint, arguing that the exception did not apply because Fisher and Harrah's were acting as Barnes' agent when the injury occurred.

In March 1999, State Farm moved for summary judgment. In April 1999, Fisher and Harrah's responded to State Farm's motion for summary judgment and filed a cross-motion for summary judgment, asserting that they were Barnes' agents and therefore were exempt from the exclusion clause; the clause language was ambiguous; and the exclusion violated public policy.

In May 1999, the circuit court granted State Farm's summary judgment motion and denied Fisher and Harrah's cross-motion, finding that "Fisher, while working as a valet for Harrah's was in the 'car business' [because] his job was to 'store or park land motor vehicles.' " In addition, Fisher and Harrah's were not exempt from the exclusion clause because Fisher was a bailee, not Barnes' agent, when he parked Barnes' vehicle. Last, the exclusion clause was not ambiguous and State Farm appropriately relied upon the provision when it denied the claim.

In August 1999, Fisher and Harrah's moved to reconsider the grant of summary judgment, arguing that Fisher could be both Barnes' bailee and agent, and asked the circuit court to follow a factually similar case from New Jersey, *Scott v. Salerno*, 297 N.J. Super. 437, 688 A.2d 614 (1997). The circuit court denied the motion, finding that Fisher was acting as a bailee, not Barnes' agent, and the court was not bound to follow rulings of other states' courts. This appeal followed.

## I

Fisher and Harrah's initially assert that entry of summary judgment in State Farm's favor was in error because it should not have been permitted to rely on the "car business" exclusion of the policy.

■ The construction of an insurance policy is a question of law subject to *de novo* review. *State Farm Mutual Automobile Insurance Co. v. Villicana*, 181 Ill. 2d 436, 441, 692 N.E.2d 1196 (1998); *Zimmerman v. State Farm Mutual Automobile Insurance Co.*, 312 Ill. App. 3d 1065, 1068, 729 N.E.2d 70 (2000), *appeal denied*, 189 Ill. 2d 704 (2000).

■ The primary objective in construing the language of a policy is to ascertain and give effect to the intentions of the parties as expressed in their agreement. *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497, 722 N.E.2d 1125, 1127 (1999). Language in a policy will not be enforced, however, if it contradicts public policy as mandated by the

Illinois legislature. See *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 246, 695 N.E.2d 848, 850 (1998) (*Universal Underwriters*); *Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 305 Ill. App. 3d 417, 420, 711 N.E.2d 1227, 1230 (1999) (*Pekin*).

■ Insurance is based upon the theory of spreading risk among many policyholders. *Group Life & Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 211, 59 L. Ed. 2d 261, 268, 99 S. Ct. 1067, 1073 (1979). The purpose of mandatory automobile liability insurance is not only to protect the owner against liability or some other insurance company; rather, its principal purpose is to protect the public by securing payment of their damages. See *Continental Casualty Co. v. Travelers Insurance Co.*, 84 Ill. App. 2d 200, 206, 228 N.E.2d 141, 144 (1967); *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 232, 504 N.E.2d 256 (1987); *Marcus v. Hanover Insurance Co.*, 740 So. 2d 603, 605 (La. 1999) (*Marcus*); 7 Couch on Insurance 3d § 109:5 (1997).

■ Section 7—601(a) of the Illinois Vehicle Code (Code) requires vehicles to be insured through a "liability insurance policy." 625 ILCS 5/7—601(a) (West 1998). The definition of a "motor vehicle liability policy," contained in section 7—317 of the Code (625 ILCS 5/7—317 (West 1998)) (section 7—317), mandates coverage requirements in such a policy. See *Universal Underwriters*, 182 Ill. 2d at 244, 695 N.E.2d at 850.

Section 7—317(b) provides, in pertinent part:
" 'Motor vehicle liability policy' defined. ***
(b) Owner's Policy. Such owner's policy of liability insurance:
***
2. Shall insure the person named therein and *any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.*" (Emphasis added.) 625 ILCS 5/7—317(b)(2) (West 1998).

Fisher and Harrah's argue first that State Farm cannot deny coverage based on the automobile business exclusion clause of the policy because the exception violates public policy as mandated in section 7—317(b)(2), relying on *Universal Underwriters* and *Pekin*. State Farm responds that section 7—317(b)(2) and *Universal Underwriters* should not apply in the present situation because the named insured does not control the selection of the driver or the manner in which the car is driven once he relinquishes control to a third party.

In *Universal Underwriters*, a car dealership allowed Rodney Luckhart to test-drive one of its vehicles. During the test-drive, Luckhart was involved in an automobile accident. The car dealership's policy

stated that an insured included any person required by law to be insured while test-driving one of its vehicles. *Universal Underwriters*, 182 Ill. 2d at 241-42, 695 N.E.2d at 849. Luckhart's insurance carrier, State Farm, settled all claims against Luckhart and then sued the dealership's insurance carrier, Universal Underwriters, for reimbursement. The circuit court granted State Farm summary judgment and the appellate court affirmed (*State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 285 Ill. App. 3d 115, 674 N.E.2d 52 (1996)). The supreme court affirmed, finding section 7—317(b) mandated that "a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission," and if an insurance policy fails to include a clause providing coverage to persons who are permitted to use the named insured's vehicle, such a clause will be read into the policy. *Universal Underwriters*, 182 Ill. 2d at 244-46, 695 N.E.2d at 850-51.

In *Pekin*, the appellate court found the language in a car dealership's insurance policy that excluded test-drivers from coverage could not be enforced because it contradicted the mandatory language of 7—317(b). *Pekin*, 305 Ill. App. 3d at 420, 711 N.E.2d at 1230.

The instant case presents a question of first impression for the Illinois state courts. No Illinois case is found in which a court has determined whether automobile business exclusions are against public policy, post mandatory liability insurance (625 ILCS 5/7—601(a) (West 1998)) and *Universal Underwriters*.[2] The holding in *Universal Underwriters*, that "a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission" (*Universal Underwriters*, 182 Ill. 2d at 244, 695 N.E.2d at 850), is contrary to the automobile business exclusion because the exception does not cover "any other person using the vehicle with the named insured's permission." Language contrary to the mandatory language of section 7—317(b) is not enforced. *Pekin*, 305 Ill. App. 3d at 420, 711 N.E.2d at 1230.

Other state courts that have considered an automobile business exclusion with reference to the state's compulsory liability insurance

---

[2]*Fuller's Car Wash, Inc. v. Liberty Mutual Insurance Co.*, 298 Ill. App. 3d 167, 698 N.E.2d 237 (1998), addressed an automobile business exclusion but did not address whether the exclusion violated public policy. *Van Vleck v. Barbee*, 115 Ill. App. 3d 936, 451 N.E.2d 25 (1983), found an automobile business exclusion was not contrary to public policy; however, this case was decided before mandatory liability insurance was required and *Universal Underwriters* became law.

laws have found that such exclusions conflict with public policy and are not enforceable. See *Scott v. Salerno*, 297 N.J. Super. 437, 688 A.2d 614 (1997) (state's public policy to provide coverage to anyone using a vehicle with the owner's permission voids and makes unenforceable a provision excluding coverage for anyone parking the insured's vehicle); *Marcus*, 740 So. 2d 603 (automobile business exclusion conflicted with the state's compulsory insurance law and was not enforceable); *Farmland Mutual Insurance Co. v. Jim Moore Cadillac-Oldsmobile, Inc.*, 283 S.C. 33, 320 S.E.2d 719 (1984) (automobile business exclusion void because it attempted to redefine "insured" to narrow the coverage required by statute); *DeWitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981) ("garage shop exclusion" void because it contravened statutory requirements). *Cf. Universal Underwriters Insurance Co. v. Travelers Insurance Co.*, 669 A.2d 45 (Del. 1995) (automobile business exclusion clause not contrary to public policy underlying the state-mandated insurance program). See Annotation, *Who is "Employed or Engaged in the Automobile Business" Within Exclusionary Clause of Liability Policy*, 55 A.L.R.4th 261 (1987).

■ Notwithstanding State Farm's argument to the contrary, *Universal Underwriters* is controlling. Here, as in *Universal Underwriters*, the owner of the vehicle permitted another person to drive his vehicle by surrendering his vehicle to him, thereby relinquishing control over the manner in which the vehicle was driven. *Universal Underwriters* held that, in Illinois, "a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission" (*Universal Underwriters*, 182 Ill. 2d at 244, 695 N.E.2d at 850). The subject automobile business exclusion clause directly conflicts with *Universal Underwriters*, the mandatory language of section 7—317(b), and the policy of mandatory automobile liability insurance legislation. Accordingly, the exclusion is not enforceable.

## II

■ A State Farm argument, tardily brought to the court's attention for the first time at oral argument, concerns a sentence contained in section 7—601(a) (625 ILCS 7—601(a) (West 1998)): "[n]othing herein shall deprive an insurer of any policy defense available at common law." State Farm urges that this provision requires affirmation of the circuit court's judgment because previous case law, now common law, found the automobile business exclusions proper defenses to coverage. See, *e.g.*, *Van Vleck v. Barbee*, 115 Ill. App. 3d 936, 451 N.E.2d 25 (1983). The language cited by State Farm was present at the time both *Universal Underwriters* and *Pekin* were decided. Neither court specifi-

cally addressed the cited clause; nevertheless, the courts were certainly aware of the clause, as well as previous case law that found exclusion clauses were permissible in "garage policies," the same type of policy at issue in *Universal Underwriters* and *Pekin*. In *Universal Underwriters*, the supreme court construed the very section of the Code, if not the specific language (*Universal Underwriters*, 182 Ill. 2d at 244, 695 N.E.2d at 850). See, *e.g.*, *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79, 650 N.E.2d 14 (1995). Each court found that public policy mandated coverage. Although case law exists that found automobile exclusions did not violate public policy, these cases were decided before compulsory insurance was mandated by legislation and are therefore inapposite. See *Universal Underwriters*, 182 Ill. 2d at 245, 695 N.E.2d at 850-51; see also *Ney v. Yellow Cab Co.*, 2 Ill. 2d 74, 81, 117 N.E.2d 74, 79 (1954) (common law is comprised of flexible principles that adapt to changing times and, as adopted by the legislature, continually expand with the progress of society).

Furthermore, section 7—601 was amended by Public Act 91—661 (Pub. Act 91—661, eff. December 22, 1999), after the supreme court construed the section in *Universal Underwriters*. The court's construction, which we follow, did not evoke an amendment offering further explanation of the legislature's intent regarding section 7—601(a), creating a presumption that the legislature acquiesced in the court's construction. *Kobylanski v. Chicago Board of Education*, 63 Ill. 2d 165, 172, 347 N.E.2d 705, 709 (1976).

Other reasons suggest themselves in support of reversal. The amenities of providing valet parking are to be found in many commercial and business enterprises, such as restaurants, hotels, country clubs, other recreational establishments, catering establishments, athletic events, among others, where parking of vehicles becomes inconvenient because of weather conditions or distance from the establishment, etc., which makes parking valet services a competitively effective, adjunctive business attraction. In such instances, it cannot be said that the establishments providing parking valet services to their patrons are engaged in the "car business" or "business *** where the *purpose* is to transport, store or park land motor vehicles" (emphasis added), as defined by the instant State Farm policy. To the contrary, common sense persuades that the purpose of such a service is to run a convenient and attractive restaurant or hotel or business or, as in this instance, a gaming casino, thereby making the enterprise profitable, competitive and attractive to those inclined to attend, rather than to carry on a "car business." In the present case, the purpose of providing a parking valet service for Harrah's patrons was hardly that of a "car business" as defined by the State Farm policy.

In light of this disposition, Fisher and Harrah's remaining arguments, that the automobile business exclusion clause was ambiguous and that it did not apply by its own terms, need not be addressed.

### III

■ Fisher and Harrah's lastly argue that State Farm denied coverage in bad faith and should be sanctioned pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1998)).

Section 155(1) provides, in pertinent part:

> "In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance *** or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed ***." 215 ILCS 5/155(1) (West 1998).

The circuit court determines what conduct constitutes a vexatious and unreasonable refusal to defend. *Bedoya v. Illinois Founders Insurance Co.*, 293 Ill. App. 3d 668, 679, 688 N.E.2d 757, 764 (1997) (*Bedoya*). The court may consider whether the insured was forced to file suit to recover and whether the insured was deprived the use of his property. If there is a *bona fide* dispute concerning coverage, delay in settling the claim may not violate the statute. *Bedoya*, 293 Ill. App. 3d at 679, 688 N.E.2d at 764.

In the instant case, the circuit court found that State Farm "appropriately relied upon [the automobile business exclusion] when it denied Fisher and Harrah's tender." Fisher and Harrah's did cite *Universal Underwriters* in their pleadings and correspondence to State Farm; however, the court agreed with State Farm's argument and distinguished *Universal Underwriters* on the facts. No specific Illinois case law existed and State Farm's argument and interpretation were reasonable and did not evince vexatiousness. A *bona fide* dispute concerning coverage existed. The court properly found that sanctions under section 155 were not mandated. This aspect of the court's determination is affirmed.

For the foregoing reasons, the judgment of the circuit court is reversed in part and affirmed in part. The order of summary judgment in State Farm's favor is reversed and the cause is remanded for entry of summary judgment in favor of defendants; the court's denial of sanctions is affirmed.

Reversed in part with directions; affirmed in part.

THEIS, P.J., and GREIMAN, J., concur.