Docket No. 98329–Agenda 13–January 2005.

PROGRESSIVE UNIVERSAL INSURANCE COMPANY OF ILLINOIS, Appellant, v. LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellee.

Opinion filed April 21, 2005.

JUSTICE KARMEIER delivered the opinion of the court:

Ronald Abbinante delivered pizzas for Casale Pizza, Inc. While using his mother’s minivan to make a delivery, Abbinante struck and injured a pedestrian. The issue in this case is whether Progressive Universal Insurance Company of Illinois (Progressive), which issued the motor vehicle liability insurance policy on Abbinante’s mother’s van, had a duty to defend and indemnify him in a personal injury action subsequently filed by the injured pedestrian and the pedestrian’s wife. In a declaratory judgment action filed by Progressive, the circuit court of Du Page County held that because of a provision in the policy excluding coverage for bodily injury or property damage arising out of the use of the vehicle to carry persons or property for compensation or a fee, including food delivery, the company owed no such duty. The appellate court reversed, finding the exclusion to be void and unenforceable under this state’s law mandating liability coverage for permissive users of a vehicle. 347 Ill. App. 3d 411. We granted Progressive’s petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now reverse the judgment of the appellate court.

The facts are undisputed. Shirley Abbinante owned a minivan which she insured through Progressive. On August 25, 2000, Mrs. Abbinante allowed her son Ronald to use the van to deliver pizzas for Casale Pizza, Inc. The company gave Ronald money for gas and paid him $1.25 for each pizza he delivered. While driving his mother’s van in the course of delivering a pizza for the company, Ronald struck a pedestrian named Mikhail Lavit. Lavit and his wife sued Ronald and Casale Pizza to obtain damages for personal injuries, including brain and spinal cord injuries, sustained as a result of the accident.

Progressive began defending Ronald in the personal injury action under a reservation of rights. While that action was underway, the Lavits sought and obtained a payment of $100,000 from their own insurer, Liberty Mutual Fire Insurance Company (Liberty Mutual). That payment represented the limits of the uninsured-motorist coverage provided by their Liberty Mutual motor vehicle policy.

After paying the policy limits to the Lavits, Liberty Mutual demanded reimbursement of that sum from Progressive. Progressive responded by bringing this action in the circuit court of Du Page County to obtain a declaratory judgment that it had no duty to defend or indemnify Ronald in the Lavits’ personal injury action. Liberty Mutual, in turn, asserted a counterclaim against Progressive seeking reimbursement of the sums it had paid to the Lavits under the uninsured-motorist provisions of their policy.

Progressive moved for summary judgment pursuant to section 2–1005 of the Code of Civil Procedure (735 ILCS 5/2–1005 (West 2000)) arguing that it owed no duty to defend or indemnify Ronald because his conduct fell within the terms of an exclusion set forth in the policy it issued to Ronald’s mother. That exclusion stated that coverage under the policy, including Progressive’s duty to defend, did not apply to bodily injury or property damage arising out of

“the ownership, maintenance, or use of a vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of *** food, or any other products.”

Liberty Mutual countered with a cross-motion for summary judgment, arguing that Progressive could not avoid its contractual obligations based on this exclusion because the exclusion was not only ambiguous, but contrary to public policy.

Following a hearing, the circuit court granted the motion for summary judgment filed by Progressive and denied the cross-motion for summary judgment filed by Liberty Mutual. In the court’s view, the food delivery exclusion in the policy was both unambiguous and valid. Progressive therefore had no duty, as a matter of law, to defend or indemnify Ronald. Absent such a duty, Liberty Mutual had no basis for obtaining reimbursement from Progressive.

The circuit court’s summary judgment order contained an express written finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason for delaying enforcement or appeal or both.
(footnote: 1) Liberty Mutual appealed. Ronald, his mother, Casale Pizza, and the Lavits, who were also named as defendants in the case, did not contest the circuit court’s judgment and are no longer involved in these proceedings.

In its appeal, Liberty Mutual argued, as it had in the circuit court, that the food delivery exclusion in the policy issued to Ronald’s mother was ambiguous and contrary to public policy. The appellate court agreed with the circuit court that the claim of ambiguity was meritless. Viewing the exclusion with reference to the particular facts of this case, the appellate court held that the exclusion was completely unambiguous and that Ronald’s conduct fell squarely within its terms. The policy excluded coverage where the vehicle was being used to deliver food for a fee or compensation, and, the appellate court observed, that was precisely what Ronald was doing at the time he hit Mr. Lavit. He was using the van to deliver food, namely, pizza, and was being paid compensation or a fee, $1.25 per delivery plus gas money, to do so. 347 Ill. App. 3d at 415.

While the appellate court found no ambiguity in the policy’s food delivery exclusion as applied to this case, it agreed with Liberty Mutual’s additional claim that the exclusion violated public policy. Relying on this court’s recent decision in 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369 (2001), the appellate court held that the exclusion was void and unenforceable because it conflicted with section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–317(b)(2) (West 2000)), which provides that a motor vehicle owner’s policy of liability insurance

“[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured[.]”

Because Ronald was using the vehicle with his mother’s express permission at the time he struck and injured Lavit, the court held that section 7–317(b)(2) required Progressive to defend and indemnify Ronald in the personal injury action brought against him by the Lavits. In the appellate court’s view, giving effect to the food delivery exclusion in the mother’s policy would conflict with this statutory requirement and contravene the goal of Illinois’ mandatory motor vehicle liability insurance law. Accordingly, the appellate court reversed the circuit court’s entry of summary judgment in favor of Progressive and entered summary judgment in favor of Liberty Mutual. 347 Ill. App. 3d at 416-18. This appeal by Progressive followed.

In the proceedings before our court, no issue is raised as to the clarity of the food delivery exclusion in the mother’s insurance policy. It is conceded to be unambiguous. The sole question presented for our review is whether the appellate court erred in holding that Liberty Mutual was entitled to summary judgment on the grounds that the policy exclusion was void and unenforceable.

The standards applicable to this inquiry are well established. Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Whether the entry of summary judgment was appropriate is a matter we review 
de novo
. 
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 284 (2002). 
De novo 
review is also appropriate because resolution of this appeal turns on questions of statutory interpretation. 
Midstate Siding & Window Co. v. Rogers
, 204 Ill. 2d 314, 319 (2003).

Section 7–601(a) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–601(a) (West 2000)) mandates liability insurance coverage for automobiles and other motor vehicles designed to be used on a public highway. Under the statute, no person is permitted to operate, register or maintain registration of such a motor vehicle unless the vehicle is covered by a liability insurance policy. 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 373. Certain types of vehicles are exempt from this requirement. See 625 ILCS 5/7–601(b) (West 2000). None of those exemptions, however, is applicable here.

The liability insurance mandated by section 7–601(a) must meet certain requirements. One of those requirements is set forth in section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–317(b)(2) (West 2000)). As indicated earlier in this opinion, section 7–317(b)(2) provides that a motor vehicle owner’s policy of liability insurance

“[s]hall insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured[.]” 625 ILCS 5/7–317(b)(2) (West 2000).

Provisions such as this, which extend liability coverage to persons who use the named insured’s vehicle with his or her permission, are commonly referred to as “omnibus clauses.” Where, as in Illinois, an omnibus clause is required by statute to be included in motor vehicle liability policies, our court has held that such a clause must be read into every such policy. 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240, 243-44 (1998).

The principal purpose of this state’s mandatory liability insurance requirement is to protect the public by securing payment of their damages. 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 376. It is axiomatic that a statute that exists for protection of the public cannot be rewritten through a private limiting agreement. One reason for that rule is that “the members of the public to be protected are not and, of course, could not be made parties to any such contract.” 
American Country Insurance Co. v. Wilcoxon
, 127 Ill. 2d 230, 241 (1989). In accordance with these principles, a statute’s requirements cannot be avoided through contractual provisions. Where liability coverage is mandated by the state’s financial responsibility law, a provision in an insurance policy that conflicts with the law will be deemed void. The statute will continue to control. 
American Country Insurance Co. v. Wilcoxon
, 127 Ill. 2d at 241.

In evaluating whether statutory provisions override contractual terms, courts must remain mindful of principles of freedom of contract. The freedom of parties to make their own agreements, on the one hand, and their obligation to honor statutory requirements, on the other, may sometimes conflict. These values, however, are not antithetical. Both serve the interests of the public. Just as public policy demands adherence to statutory requirements, it is in the public’s interest that persons not be unnecessarily restricted in their freedom to make their own contracts. The power to declare a private contract void as against public policy is therefore exercised sparingly. 
First National Bank of Springfield v. Malpractice Research, Inc.
, 179 Ill. 2d 353, 359 (1997). An agreement will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare. Whether an agreement is contrary to public policy depends on the particular facts and circumstances of the case. 
H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.
, 209 Ill. 2d 52, 57 (2004).
 Liberty Mutual’s public policy challenge to the food delivery exclusion at issue in this case relies primarily on our decision in 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369 (2001). In that case, a man named Maurice Barnes drove to a casino with a companion, Ruby Smith, in a car owned by Barnes and insured by State Farm. Barnes left the subject vehicle with a parking valet employed by the casino while he and Smith went in to gamble. When the two were ready to leave, the valet retrieved the vehicle. As Smith attempted to enter the car on the passenger’s side, the vehicle rolled backwards, striking her and knocking her to the ground.

Smith subsequently filed a negligence action against Barnes, the parking valet, and the casino. The valet and the casino tendered their defense to State Farm. State Farm refused the tender and brought an action to obtain a declaratory judgment that it owed no duty to defend or indemnify the valet and the casino. As grounds for its claim, State Farm relied on an exclusion in the vehicle’s insurance policy which specified that no coverage would be provided when the subject vehicle was “ ‘BEING REPAIRED, SERVICED OR USED BY ANY 
PERSON
 EMPLOYED OR ENGAGED IN ANY WAY IN A 
CAR BUSINESS.
’ ” (Emphases in original.) 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 372-73.

On cross-motions for summary judgment, the circuit court ruled in favor of State Farm and against the valet and casino, holding that the policy exclusion was applicable and that State Farm therefore had no duty to provide a defense or indemnification. The appellate court reversed, concluding that State Farm could not avail itself of the car business exclusion to avoid its obligations under the policy. 
State Farm Mutual Automobile Insurance Co. v. Fisher
, 315 Ill. App. 3d 1159 (2000). We granted State Farm’s petition for leave to appeal and affirmed the appellate court.

The appellate court advanced two basic grounds in support of its decision. First, it held that the exclusion was unenforceable because it conflicted with the mandatory language of the omnibus clause provision set forth in section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law (625 ILCS 5/7–317(b)(2) (West 2000)) and the policy of this state’s mandatory automobile insurance legislation. 
State Farm Mutual Automobile Insurance Co. v. Fisher
, 315 Ill. App. 3d at 1163-65. Second, it ruled that the exclusion was inapplicable because the valet parking service furnished by the casino did not constitute a “car business” within the meaning of the policy. 
State Farm Mutual Automobile Insurance Co. v. Fisher
, 315 Ill. App. 3d at 1166.

Our opinion affirming the appellate court’s judgment relied on only the first of these grounds. We noted that when a vehicle owner gives his vehicle to a person engaged in a car business,

“the owner is also giving that person the express or implied permission to use the vehicle. Therefore, a provision written into an insurance policy that excludes coverage for persons engaged in an automobile business necessarily excludes coverage for persons who are using an insured’s vehicle with the insured’s express or implied permission.” 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 374.

Citing our opinion in 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240 (1998), and the clear language of section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law, we wrote that the statute mandates liability coverage for permissive users of motor vehicles. We therefore concluded, as the appellate court had, that the because the policy excluded from coverage persons using the vehicle with the insured’s permission, it violated section 7–317(b)(2) and was void. As a result, the exclusion could not be relied upon by State Farm to deny the request by the valet and the casino to defend and indemnify them. 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 374.

State Farm opposed this conclusion, arguing that if the exclusion here were unenforceable, virtually every other possible exclusion that an insurer might include in a liability policy would likewise be prohibited. Without addressing the merits of State Farm’s argument, we held simply that our decision was limited to the particular exclusion at issue in the case. “The permissibility of other possible policy exclusions is not before us today,” we wrote, “and we express no opinion as to any other exclusion.” 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 379.

Although we expressly limited the reach of our decision in 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369 (2001), Liberty Mutual argued to the appellate court in this case that the reasoning of
 Smith
 applied with equal force to the food delivery exclusion at issue here. The appellate court found Liberty Mutual’s argument to be meritorious and concluded that the food delivery exclusion was void and unenforceable for the same reason we found the car business exclusion in 
Smith
 to be void and unenforceable, namely, that it conflicted with section 7–317(b)(2). 347 Ill. App. 3d at 417.

The appellate court’s reliance on 
Smith
 is understandable. That case is similar, in many respects, to the matter before us here. As suggested earlier in this opinion, however, whether a contractual agreement is void as against public policy ultimately depends on the particular facts and circumstances of each case. Our examination of 
Smith 
discloses a significant factual distinction between the car business exclusion at issue there and the food delivery exclusion in Ronald’s mother’s policy.

The car business exclusion in 
Smith 
applied only to permissive users. Unlike the exclusion in this case, it was inapplicable to the named insured or his spouse, or any agent, employee or partner of the insured, his spouse and certain others. The named insured, his spouse, and the others were expressly exempted from the exclusion. Admittedly, we did not specifically discuss that fact in our opinion. As we have just indicated, however, we took care to limit our opinion to the particular provision at issue in the case (
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d at 379), and the exemption from the exclusion was clearly described in the appellate court’s opinion (see 
State Farm Mutual Automobile Insurance Co. v. Fisher
, 315 Ill. App. 3d 1159, 1161 (2000)).

The exemption from the exclusion in 
Smith
 meant that conduct which would be covered if undertaken by the insured would not be covered if undertaken by someone who was using the vehicle with the insured’s permission. Barnes, the insured, was free to engage in a “car business” without compromising his liability coverage. It was only others to whom Barnes entrusted the vehicle who were not covered for “car business” activities. This disparity was plainly inconsistent with section 7–317(b)(2)’s requirement that liability insurance policies cover not only the insured but also “any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.” 625 ILCS 5/7–317(b)(2) (West 2000).

No similar disparity is present in the policy issued by Progressive to Ronald’s mother in the present case. Under the clear and unambiguous terms of that policy, no one is exempt from the food delivery exclusion. The exclusion applies with equal force to Ronald’s mother, who is the named insured, and to anyone using her van with her permission. Accordingly, if Ronald’s mother used the van to deliver pizzas, she would have no more right to insist that Progressive defend and indemnify her than Ronald has. The policy would provide no coverage.

Because the exclusion in Progressive’s policy does not differentiate between the insured and those using the vehicle with the insured’s permission, there is no possibility, as there was in 
Smith
, that liability insurance coverage afforded the insured would also not be extended to permissive users of the vehicle. Section 7–317(b)(2)’s requirement that liability insurance policies cover not only the insured but also “any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured” (625 ILCS 5/7–317(b)(2) (West 2000)) is therefore not imperiled. As a result, the food delivery exclusion does not conflict with the statute and cannot be said to be void as against public policy.

This conclusion is supported by basic rules of statutory interpretation. The cardinal rule of statutory construction, and the one to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. 
Country Mutual Insurance Co. v. Teachers Insurance Co.
, 195 Ill. 2d 322, 330 (2001). In undertaking that responsibility, we must presume that when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results. 
Sun Choi v. Industrial Comm’n
, 182 Ill. 2d 387, 396 (1998). Such results, however, would be an inevitable consequence of the interpretation of section 7–317(b)(2) urged by Liberty Mutual in this case.

If section 7–317(b)(2) operated to invalidate the food delivery exclusion with respect to permissive users such as Ronald, as Liberty Mutual argues it does, Progressive would be obliged to defend and indemnify permissive users for conduct that would clearly not be covered if undertaken by the actual named insured. Recognizing that obligation, named insureds could readily evade the policy’s restrictions merely by lending their vehicles to one another. After making the temporary swap, the insureds would be mere permissive users of one another’s vehicles and, as such, would enjoy liability coverage for conduct where no coverage would lie if the insureds drove their own vehicles.

Insurance companies make underwriting decisions and calculate policy premiums based on the characteristics of a policyholder, the risks the policyholder presents, and the contractual terms and limitations by which the policyholder agrees to be bound. If policyholders were allowed to avoid the limitations in their policies and obligate the insurance companies to pay damages by swapping vehicles whenever they wanted to engage in conduct that would otherwise be excluded from coverage, the criteria employed by insurance companies in issuing policies would be fundamentally eroded. Through the simple act of loaning his or her vehicle to others, a policyholder could subject an insurer to risks the insurance company had no way to foresee and which the parties to the insurance contract had expressly agreed to exclude. The insurance company would be denied the benefit of its bargain, and the insured would receive a windfall in the form of coverage for which it did not pay.

Liberty Mutual responds to the problems that would flow from disparate application of the food delivery exclusion by arguing that under the law, the exclusion is not only void and unenforceable as to permissive users, it is also void and unenforceable as to the named insured. Indeed, Liberty Mutual contends that Illinois’ mandatory liability insurance requirement nullifies virtually any exclusion that would allow an insurer to avoid providing less than the minimum liability coverage required by law.
(footnote: 2) The only valid exclusions, in Liberty Mutual’s view, are those authorized by the legislature.

We find this contention untenable. Illinois law prohibits persons from operating, registering or maintaining registration of a motor vehicle designed to be used on a public highway unless the vehicle is covered by a liability insurance policy. 625 ILCS 5/7–601(a) (West 2000). By its terms, this prohibition runs to the operators and owners of motor vehicles, not their insurance carriers. Merely because persons cannot operate or own vehicles without the required insurance does not mean that insurance carriers are required to cover, without exclusion, every loss operators and owners sustain.

Because the requirement to maintain liability insurance is statutory in origin, any restrictions on the insurance required to comply with the law must also emanate from our statutes. The pertinent statutes here specify minimum coverage amounts (625 ILCS 5/7–203, 7–601(a), 7–317(b)(3) (West 2000)) and impose various other requirements, including a requirement that a policy’s liability coverage apply to losses that occur in Canada as well as the continental limits of the United States. 625 ILCS 5/7–317(b)(3) (West 2000). Nowhere, however, does the law expressly forbid parties to an insurance contract from excluding certain risks from liability coverage.

Contrary to Liberty Mutual’s view, section 7–317(b)(2) of the Illinois Safety and Family Financial Responsibility Law contains no such prohibition. As discussed earlier in this opinion, it simply requires that a motor vehicle liability policy insure not only the person named therein, but also “any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.” 625 ILCS 5/7–317(b)(2) (West 2000).

That permissive users must be covered along with the named insured in no way compels the conclusion that exclusions are never permissible. Inclusion of permissive users goes to the issue of 
who
 must be covered. It says nothing of 
what risks
 must be covered. To hold that requiring coverage for permissive users means that insurers are forbidden from excluding certain types of risks from coverage requires a leap in reasoning that neither the language of the statute nor the rules of statutory construction will support. It is a 
non sequitur
.

A more reasonable interpretation of section 7–317(b)(2), and the one we adopt, is that the legislature merely intended to insure that the common and often unavoidable practice of entrusting one’s vehicle to someone else does not foreclose an injured party from obtaining payment for otherwise covered losses resulting from operation of the vehicle. The scope of coverage is unaffected by the law. The statute simply eliminates from coverage determinations the happenstance that a vehicle was operated by a permissive user rather than the actual owner. If a loss is covered by the policy, the fact that the vehicle was operated by a permissive user will not excuse the insurer from its obligation to pay. The loss will continue to be covered. Conversely, if a loss is excluded from coverage by the policy, the fact that the vehicle was operated by a permissive user will not trigger an obligation to pay that would not have existed had the vehicle been operated by its actual owner. The loss will continue to be excluded.

Had the General Assembly wished to bar insurers from excluding certain risks from motor vehicle liability policies, it could easily have so provided in the pertinent statutes. It did not do so. To the contrary, the Illinois Safety and Family Financial Responsibility Law clearly contemplates that exclusions may be included in policies and that those exclusions will be upheld. That is why section 7–602 of the statute (625 ILCS 5/7–602 (West 2000)) requires insurance cards to contain a disclaimer admonishing policyholders to “[e]xamine policy exclusions carefully.”

In urging us to adopt the view that section 7–317(b)(2) forbids exclusions such as the food delivery exclusion involved in this case, Liberty Mutual directs our attention to decisions from various foreign jurisdictions, including 
Salamon v. Progressive Classic Insurance Co.
, 379 Md. 301, 841 A.2d 858 (2004). In that case, the Court of Appeals of Maryland held that the same exclusion at issue here was unenforceable. In so holding, the court noted that it “consistently has declared invalid insurance policy exclusions that excuse or reduce the insured parties’ coverage below the statutory minimum level where exclusions are not authorized explicitly by the General Assembly.” 
Salamon
, 379 Md. at 311, 841 A.2d at 865. The court chronicled its long history of nullifying insurance provisions in cases where the provisions were not authorized by statute. 
Salamon
, 379 Md. at 311-16, 841 A.2d at 865-68. Because the Maryland General Assembly had neither explicitly nor implicitly authorized insurers to add an exclusion such as the “pizza exclusion” to insurance contracts, the court held that Maryland’s compulsory insurance law rendered the exclusion void and against public policy. 

The  litigation before us today is governed by the law of Illinois, not Maryland. Unlike Maryland courts, our court has never required that insurance exclusions be deemed invalid if those exclusions have not been authorized explicitly by our General Assembly. Rather, our policy is to enforce exclusions not explicitly provided for by law based on principles of contract interpretation. Due to this difference, we are not persuaded by the rationale utilized in 
Salamon.
  We are likewise unpersuaded by  
Stanfel v. Shelton
, 563 So. 2d 410 (La. App. 1990), and 
St. Paul v. Mid-Century Insurance Co.
, 18 P.2d 854 (Colo. App. 2001). Those decisions, which Liberty Mutual also cites, fail to address the dichotomy, explained in this opinion,  between exclusions based on the acts involved and those based on status of the persons who performed the acts. 

In further support of its view that section 7–317(b)(2) prohibits insurers from excluding risks from liability coverage, Liberty Mutual contends that allowing such exclusions would be inherently inconsistent with the public policy of protecting the public by securing the payment of its damages. This argument must also fail. Although exclusions, where applicable, will shield the particular company which issued the policy from financial responsibility, that does not mean that no insurer will be liable.

Under the mandatory insurance law enacted by our General Assembly, the effects of policy exclusions are substantially offset by the requirement of uninsured-motorist coverage. See 625 ILCS 5/7–601(a) (West 2000); 215 ILCS 5/143a, 143a–2 (West 2000). If a driver causes an accident which inflicts bodily injury on someone else and the injury is not covered by the driver’s motor vehicle liability policy because of an exclusion in the policy, the driver will be not be considered an insured motorist and his automobile will not be regarded as an insured vehicle. The injured party will therefore not be able to avail himself of the driver’s liability coverage. He will, however, be entitled to seek payment under the uninsured-motorist provisions of his own motor vehicle policy. See 
Smiley v. Estate of Toney
, 44 Ill. 2d 127, 130-31 (1969); 
Barnes v. Powell
, 49 Ill. 2d 449, 454 (1971). That is precisely what occurred in this case. For the purposes of the motor vehicle policy it issued to the Lavits, Liberty Mutual conceded that Progressive’s decision to disclaim liability under the food delivery exclusion in Ronald’s mother’s policy made Ronald an uninsured motorist. Ronald’s status as an uninsured motorist, in turn, entitled the Lavits to obtain payment under the uninsured-motorist provisions of their policy with Liberty Mutual. In this way, the goal of protecting the public by securing the payment of its damages was fully achieved.
(footnote: 3)
 For the foregoing reasons, the food delivery exclusion in the policy issued by Progressive to Ronald’s mother was not void and unenforceable under this state’s mandatory insurance law. The circuit court’s entry of summary judgment in favor of Progressive and against Liberty Mutual was therefore correct and should not have been disturbed by the appellate court. Accordingly, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

Appellate court judgment reversed;

circuit court judgment affirmed.

JUSTICE KILBRIDE, dissenting:

The majority concludes the food delivery (“pizza”) exclusion in Progressive’s policy was not void and does not violate this state’s mandatory liability insurance law. Slip op. at 14. Accordingly, Progressive may enforce its exclusion even as applied to the mandatory minimum $20,000/40,000 coverage required by section 7–203 of the Vehicle Code. 625 ILCS 5/7–601 (West 2000). I believe this holding contravenes the clear public policy underlying the mandatory insurance law and, therefore, I respectfully dissent.

Section 7–601 of the Vehicle Code provides, in pertinent part: “No person shall operate *** a motor vehicle designed to be used on a public highway unless the motor vehicle is 
covered 
by a liability insurance policy.” (Emphasis added.) The statute further provides: “The insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 7–203 of this Code ***.” 625 ILCS 5//7–601(a) (West 2000).

The majority acknowledges our holding in 
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369, 376 (2001), that the “principal purpose [of this state’s mandatory liability insurance requirement] is to protect the public by securing payment of their damages.” Slip op. at 5. Yet the majority’s holding subverts this purpose by allowing mandatory minimum coverage to be defeated by a contractual exclusion not explicitly authorized by the legislature. Although section 7–601 exempts certain categories of vehicles such as government vehicles and implements of husbandry from its application, no statutory language authorizes any contractual exclusion from coverage, including the so-called “pizza exclusion.” The majority contends the Illinois Safety and Family Financial Responsibility Law clearly contemplates policies may contain enforceable exclusions because section 7–602 of the statute (625 ILCS 5/7–602 (West 2000)) requires insurance cards to contain a disclaimer admonishing policy holders to “[e]xamine policy exclusions carefully.” Slip op. at 13. It is not disputed that coverage exclusions may be enforced 
above
 the statutorily required minimum limits. Hence, the warning in section 7–602 is appropriate and is not in conflict with the express requirement that all vehicles shall be covered for bodily injury and property damage in minimum amounts.

The result reached by the majority increases the likelihood tortiously caused vehicular accidents will go uncompensated because no insurance coverage will be available from the tortfeasor. Although the majority recognizes this possibility, it holds this result is offset by the statutory requirement of uninsured-motorist coverage. Slip op. at 13. The unfortunate possibility remains, however, that innocent injured parties, such as pedestrians, entitled to recovery may not have their own uninsured-motorist coverage and may, thus, be totally unprotected. The majority asserts in a footnote that such gaps in coverage present questions for the legislature, rather than this tribunal. Slip op. at 14 n.3. I disagree. A plain reading of section 7–601 compels the conclusion that the legislature intended to mandate liability coverage for all automobiles operated in Illinois with statutory minimum limits of liability. Contractual coverage exclusions are simply incompatible with that intention. With the validation of the “pizza exclusion”in this case, the vehicle driven by Robin Abbinante was not “covered” as expressly required by the statute.

Other jurisdictions considering this issue have concluded mandatory insurance statutes render policy exclusions unenforceable to the extent of required minimum limits as a matter of public policy. In 
Salamon v. Progressive Classic Insurance Co.
, 379 Md. 301, 841 A.2d 858 (2004), the Court of Appeals of Maryland, that state’s highest tribunal, considered whether a commercial use exclusion, identical to the exclusion in the case before us, could be applied to defeat coverage. Progressive moved for summary judgment, arguing the policy unambiguously excused it from both coverage and the duty to defend. Salamon countered that Progressive’s exclusion contravenes Maryland public policy and, as a result, is invalid and unenforceable. 
Salamon
, 379 Md. at 305, 841 A.2d at 861. The trial court granted Progressive’s motion, Salamon appealed, and the reviewing court reversed. The court noted the Maryland General Assembly had enacted a “ ‘comprehensive law that, among other things, inaugurated compulsory insurance or other required security, established [the Maryland Automobile Insurance Fund] as an insurer of last resort, prohibited the arbitrary cancellation and non-renewal of motor vehicle insurance policies, and required policies to contain collision and [personal injury protection] coverage.’ ”
 Salamon
, 379 Md. at 310, 841 A.2d at 864, quoting 
Maryland Automobile Insurance Fund v. Perry
, 356 Md. 668, 674, 741 A.2d 1114, 1117 (1999).

Thus, the Maryland statutory scheme, while not identical, is substantially similar to our own. As in 
State Farm
, the Maryland court had earlier held Maryland’s statute was intended to “make certain that those who own and operate motor vehicles in this State are financially responsible.” 
Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman
, 288 Md. 151, 154, 416 A.2d 734, 736 (1980). The 
Gartelman 
court further noted that “[t]his legislative policy has the overall remedial purpose of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents.” 
Gartelman
, 288 Md. at 154, 416 A.2d at 736. The 
Salamon 
court reviewed a series of cases over a 30-year period consistently declaring invalid insurance policy exclusions excusing or reducing the insured’s coverage below the statutory minimum when such exclusions were not explicitly authorized by the General Assembly. 
Salamon
, 379 Md. at 311-14, 841 A.2d at 864-67. The court concluded the “pizza exclusion” was not expressly authorized by the legislature and was, therefore, invalid. 
Salamon
, 379 Md. at 316-17, 841 A.2d at 868. The court rejected Progressive’s argument, also made in the case before us, that a distinction should be drawn between policy exclusions “ ‘pertaining to 
classes
 of insureds, as opposed to exclusions pertaining to 
acts 
of individual insureds.’ ” (Emphases in original.) 
Salamon
, 379 Md. at 314, 841 A.2d at 866.

New York’s highest reviewing court reached a similar conclusion in 
Matter of Liberty Mutual Insurance Co. v. Hogan
, 82 N.Y.2d 57, 623 N.E.2d 536, 603 N.Y.S.2d 409 (1993). In that case, Liberty Mutual sought to enforce its “livery exclusion” in an uninsured-motorist endorsement to a personal automobile liability policy. The exclusion applied if the insured vehicle was used to carry persons or property for a fee. Passengers in the insured’s car demanded arbitration, and Liberty Mutual petitioned for a stay. The trial court denied the stay, and the intermediate appellate court affirmed. The Court of Appeals affirmed, noting New York’s mandatory uninsured-motorist statute did not provide for exclusions. The court reasoned that “[t]he exclusion is inconsistent with the sound public policy of this State of ensuring that innocent victims of motor vehicle accidents are compensated for their injuries and losses.” 
Liberty Mutual
, 82 N.Y.2d at 61, 623 N.E.2d at 539, 603 N.Y.S.2d at 412. Intermediate appellate courts in Louisiana and Colorado have also reached similar results. See
 Stanfel v. Shelton
, 563 So. 2d 410 (La. App. 1990); 
St. Paul Fire & Marine Insurance Co. v. Mid-Century Insurance Co.
, 18 P.3d 854 (Colo. App. 2001).

The majority acknowledges other jurisdictions, including the Maryland court in 
Salamon
, have found policy coverage exclusions incompatible with mandatory minimum coverage laws. The majority declines to rely on the reasoning of those cases because “[t]he litigation is governed by the law of Illinois, not Maryland.” Slip op. at 13.  Under Illinois law, however, a court must give an unambiguous statute effect as written, without reading into it exceptions, limitations or conditions that the legislature did not express. 
In re D.L.,
 191 Ill. 2d 1, 9 (2000). The majority’s holding ignores this rule by construing the statute to allow operation of a vehicle on a public highway when the vehicle is not “covered” by a policy of liability insurance. Thus, according to the majority, “covered” does not necessarily mean covered. This is the 
non sequitur.

The reasoning of the Maryland and New York courts is persuasive, and our appellate court used a similar rationale. I agree with the appellate court that the “impetus behind mandatory automobile liability insurance is to protect the public by assuring that its damages will be paid [citation], and Progressive’s food delivery exclusion contravenes that goal.” 347 Ill. App. 3d at 416-18. Like the appellate court, I find no indication the legislature intended to permit such an exclusion. I would, therefore, affirm the judgment of the appellate court. Accordingly, I respectfully dissent.

FOOTNOTES
1:     
1
The circuit court included that finding because its summary judgment order did not fully resolve all of the claims of all of the parties. A third-party claim by Liberty Mutual against Badger Mutual Insurance Company, Casale Pizza’s insurer, remained pending, as did a claim for declaratory relief filed by Badger against Liberty Mutual and others. All matters regarding Badger were resolved through cross-motions for summary judgment in a separate order entered by the circuit court on the same date summary judgment was entered in favor of Progressive. No appeal was taken from that separate order by any party.

2:     
2
Under Liberty Mutual’s theory, the mandatory liability law has no effect on the viability of policy exclusions with respect to (1) losses in excess of the minimum liability coverage required by statute or (2) any form of coverage other than liability coverage. As to those matters, Liberty Mutual does not dispute that the food delivery exclusion in Progressive’s policy would remain fully operative.

3:     
3
Illinois’ present insurance scheme does not eliminate the possibility that drivers will take to the road without liability insurance, nor does it guarantee that injured parties will have their own policies to draw from, as Mr. Lavits did. As a result, there may be circumstances under which injured parties will be left without coverage of any kind. Whether such “gaps” in coverage should be addressed by the legislature and, if so, how they should be remedied, present important questions of public policy. Such questions, however, are for the General Assembly, not this tribunal, to consider.