STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, Appellee, v. UNIVERSAL UN-
DERWRITERS GROUP *et al.*, Appellants.

*Opinion filed April 16, 1998.—Rehearing denied June 1, 1998.*

BILANDIC, J., took no part.

Judge, James & Dutton, Ltd., of Park Ridge (Jay S.
Judge, Hans A. Mast and Kristine A. Karlin, of counsel),
for appellant Universal Underwriters Group.

Vincent Robertelli, of Giagnorio & Robertelli, Ltd.,

of Bloomingdale (Robert G. Black, of Naperville, of counsel), for appellee.

Stephen L. Corn and Duane A. Deters, of Craig & Craig, of Mattoon, for *amicus curiae* Illinois Automobile Dealers Association.

Williams & Montgomery, Ltd., of Chicago (David E. Neumeister, James K. Horstman, Nunzio C. Radogno and Lloyd E. Williams, Jr., of counsel), for *amici curiae* National Association of Independent Insurers & Allstate Insurance Co.

JUSTICE NICKELS delivered the opinion of the court:

In this appeal, we consider whether a car dealer's garage insurance policy covers the liability of a separately insured customer who is involved in an accident while test-driving one of the dealer's vehicles. In 1994, Rodney Luckhart took a test-drive in a Jeep Cherokee owned by defendant Joyce Pontiac GMC, Jeep-Eagle and Toyota (Joyce Pontiac). During the test-drive, Luckhart negligently collided with a vehicle owned by Vivian Carter and operated by Raun Calinee, both of whom suffered personal injuries as a result of the accident. Luckhart had automobile liability coverage under a policy issued by plaintiff, State Farm Mutual Automobile Insurance Company (State Farm). State Farm paid a total of $9,092.15 to Calinee and Carter for property damage and personal injury claims against Luckhart.

Thereafter, State Farm submitted a claim to Joyce Pontiac's insurance carrier, the defendant herein, Universal Underwriters Group (Universal). State Farm contended that a garage policy issued by Universal to Joyce Pontiac afforded primary coverage for Luckhart's liability while test-driving the Jeep Cherokee. As Luckhart's subrogee, State Farm sought reimbursement of

the amounts it had paid to Carter and Calinee. Universal denied the claim, asserting that the garage policy issued to Joyce Pontiac afforded no coverage to Luckhart in connection with the accident. State Farm then brought this lawsuit in the circuit court of Du Page County seeking recovery under the garage policy. On cross-motions for summary judgment, the trial court entered judgment in favor of State Farm in the amount of $9,092.15. The appellate court affirmed the judgment, holding that Luckhart was an insured under the garage policy. 285 Ill. App. 3d 115. We allowed Universal's petition for leave to appeal. 166 Ill. 2d R. 315. With leave of this court, the Illinois Automobile Dealers Association has filed an *amicus curiae* brief in support of Universal and the National Association of Independent Insurers and Allstate Insurance Company have filed a joint *amicus curiae* brief in support of State Farm.

## ANALYSIS

The garage policy issued by Universal provides, in pertinent part, as follows:

"WHO IS AN INSURED— ***

1. YOU;

2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission."

The parties disagree as to whether Luckhart was "required by law to be an INSURED" within the meaning of the policy and applicable statutes. State Farm relies on section 7—601 of the Illinois Vehicle Code (Code), which provides: "[n]o person shall operate, register or maintain registration of, and no owner shall

permit another person to operate, register or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy." 625 ILCS 5/7—601(a) (West 1996). The policy must provide coverage of at least $20,000 per person for death or bodily injury, $40,000 per accident for death or bodily injury and $15,000 for property damage ("$20,000/$40,000/$15,000"). 625 ILCS 5/7—203, 7—601(a) (West 1996). State Farm contends that Luckhart was legally required to be an insured under this provision and he therefore falls within the definition of "INSURED" set forth in the garage policy issued by Universal. Citing *Madison Mutual Insurance Co. v. Universal Underwriters Group*, 251 Ill. App. 3d 13 (1993), State Farm contends that the garage policy covers any driver who is legally required to have liability insurance, regardless of whether that driver has liability coverage under some other policy.

Universal acknowledges that a potential car buyer may not test-drive a vehicle unless he or she is covered by liability insurance in the requisite amount. However, Universal contends that section 7—601(a) does not specify that the test-driver must be covered under *the dealer's* policy. Universal relies on *Steinberg v. Universal Underwriters Insurance Co.*, 272 Ill. App. 3d 79 (1995), which held that a garage policy with identical language "was intended to cover only uninsured or underinsured customers, those otherwise 'required by law to be an INSURED.'" *Steinberg*, 272 Ill. App. 3d at 83.

We agree with State Farm that under Illinois law, a car dealer's liability policy must provide coverage for test-drivers such as Luckhart, and Luckhart was therefore a person required by law to be an "INSURED" under Joyce Pontiac's garage policy. A provision in an automobile insurance policy extending liability coverage to persons who use the named insured's vehicle with his

or her permission is commonly referred to as an omnibus clause. See 7 Am. Jur. 2d *Automobile Insurance* § 225 (1997). Omnibus clauses are sometimes required by statute to be included in automobile or motor vehicle liability policies, and where this is the case, such a clause must be read into every such policy. 7 Am. Jur. 2d *Automobile Insurance* § 226 (1997).

Section 7—601(a)(1) of the Code requires vehicles to be covered by a "liability insurance policy." That provision does not specifically indicate whether the policy must contain an omnibus clause. However, a similar term, "motor vehicle liability policy," is defined in section 7—317 of the Code as follows:

> "§ 7—317 'Motor vehicle liability policy' defined. (a) Certification.—A 'motor vehicle liability policy', as that term is used in this Act, means an 'owner's policy' or an 'operator's policy' of liability insurance, certified as provided in Section 7—315 or Section 7—316 as proof of financial responsibility for the future ***.
>
> (b) Owner's Policy.—Such owner's policy of liability insurance:
>
> 1. Shall designate *** all motor vehicles with respect to which coverage is thereby intended to be granted;
>
> 2. Shall insure the person named therein *and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured.*" (Emphasis added.) 625 ILCS 5/7—317 (West 1996).

It is well established that when a statute defines the terms it uses, those terms must be construed according to the definitions contained in the act. *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 379 (1996). Accordingly, a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission.

We note that the statutory definition above appears in article III of chapter 7 of the Code, which requires

that certain motorists submit proof of financial responsibility for the future as a condition of enjoying driving privileges. See generally 625 ILCS 5/7—301 through 7—329 (West 1996). Universal argues that the section 7—317's omnibus clause requirement only applies to liability policies used as proof of future responsibility in accordance with article III of chapter 7. We disagree. Under section 7—317, the statutory definition of "motor vehicle liability policy" applies to that term as it is "used in this Act." The word "Act," in turn, refers to the Illinois Vehicle Code, unless the context clearly indicates another meaning. 625 ILCS 5/1—101.1 (West 1996). Accordingly the definition set forth in section 7—317 applies throughout the Code and thus applies to the mandatory insurance requirement set forth in section 7—601(a). The cases Universal cites in support of its argument are inapposite because they were decided prior to the enactment of the mandatory insurance statute.

Universal further contends that Joyce Pontiac is excused from the requirements of the mandatory insurance statute under a statutory exemption for "vehicles complying with laws which require them to be insured in amounts meeting or exceeding the minimum amounts required under [section 7—601]." 625 ILCS 5/7—601(b)(6) (West 1996). Universal argues that as a seller of new vehicles, Joyce Pontiac is legally required to maintain liability coverage of at least $100,000/$300,000/ $50,000 (see 625 ILCS 5/5—101(b)(6) (West 1996)), which exceeds the $20,000/$40,000/$15,000 coverage required under the mandatory insurance statute. We conclude that the exemption which Universal cites applies only when the insurance required by law provides the type of coverage required under the mandatory insurance statute. Hence, the insurance must contain an omnibus clause insuring those driving a vehicle with

the owner's permission. Thus, regardless of whether the exemption applies, the garage policy must still cover Luckhart's liability.

Accordingly, Luckhart was an insured under the garage policy issued by Universal. Universal contends, however, that to the extent its policy covered Luckhart's liability, the policy only provided excess coverage after other insurance covering Luckhart was exhausted. We note that pursuant to custom in the insurance industry, primary liability is generally placed on the insurer of the owner of an automobile rather than on the insurer of the operator. 7A Am. Jur. 2d *Automobile Insurance* § 543 (1997). Even assuming, *arguendo*, that Universal is correct in its interpretation of the language of its garage policy, to give effect to that language would violate the public policy of this state, as defined by the General Assembly in the Code. As explained above, the Code mandates that the insurance policy issued by Universal provide omnibus coverage. In the absence of any statutory language qualifying that mandate, the statute must be construed to require primary coverage.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.