June 7, 1999

No. 4-98-0729

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PEKIN INSURANCE COMPANY, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Champaign County

STATE FARM MUTUAL AUTOMOBILE INSURANCE ) No. 98CH73

COMPANY, LINDA C. SAYLOR, and )

CAROLANNE HAGER, ) Honorable

Defendants-Appellees. ) John R. DeLaMar,

) Judge Presiding.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In February 1998, CarolAnne Hager sued Linda C. Saylor for per­son­al inju­ries re­sult­ing from an two-car acci­dent.  At the time of the accident, Saylor was test-driv­ing a vehicle owned by Sullivan Chev­rolet Company (Sullivan), an automobile dealer­ship.  Pekin In­sur­ance Com­pany (Pekin) insured Sullivan's vehicles, while State Farm Mutu­al Auto­mo­bile In­sur­ance Com­pa­ny (State Farm) provided Saylor's auto­mo­bile insurance.  In May 1998, Pekin filed a de­clar­a­to­ry judg­ment ac­tion against Saylor, Hager, and State Farm.  Pekin alleged it was not pri­mar­i­ly obli­gated to de­fend Saylor because lan­guage in Sullivan's poli­cy ex­clud­ed her from cov­er­age.  Both State Farm and Pekin filed cross-motions for sum­mary judg­ment.  The trial court grant­ed State Farm's mo­tion, con­

clud­ing Pekin was pri­marily obli­gated to defend Saylor.  We af­

firm.

I. BACKGROUND

After Hager sued Saylor, State Farm tendered her de­

fense to Pekin.  Pekin accepted the defense but reserved the right to contest its obligation to provide such defense.  In May 1998, Pekin filed this declaratory judgment ac­tion, arguing it was not primarily obligated to defend Saylor and seek­ing judg­ment from State Farm for the costs of Saylor's de­fense.

In June 1998, Pekin filed a motion for sum­mary judg­

ment.  Pekin's mo­tion rel­ied on the following lan­guage from Sullivan's ga­rage lia­bil­i­ty insurance poli­cy:

"We will pay all sums an 'insured' le­

gally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from 'garage opera­tions.'

We have the right and duty to defend any 'suit' asking for these damages.  However, we have no duty to defend 'suits' for 'bodily injury' or 'property damage' not covered by this [c]overage [f]orm."

Sullivan's policy defined "insured" as:

"(2)  Anyone *** using with your per­mission a cov­ered 'auto' you own, hire or borrow 

 except:

* * *

(d)  Your customers, if your busi­ness is shown in the [d]eclara­tions as an 'auto' dealership.  How­ever, if a cus­

tomer of yours:

(i)  Has no other available in­sur­

ance (whether prima­ry, excess or contin­gent), they are an 'in

sured' but only up to the com­

pulsory or finan­cial re­ spon­si­

bility law lim­its where the cov

ered 'auto' is prin­ci­ pal­ly ga­

raged.

(ii) Has other available insur­ance 

(whether primary, ex­cess or contin­gent) less than the com­ 

pulso­ry or fi­nan­cial responsi­ bility law limits where the cov­

ered 'auto' is prin­ci­pal­ly ga­

raged, they are an 'insured' only for the amount by which the com­

pulsory or finan­cial re­sponsi­

bility law lim­its ex­ ceed the limit of their other insur

ance."

Pekin argued Saylor's auto­mo­bile in­sur­ance satisfied the mini­mum requirements im­posed by Illi­nois stat­ute (see 625 ILCS 5/7-203 (West 1996)); thus, Saylor was ex­clud­ed from cov­erage, there­by mak­ing State Farm pri­mar­i­ly obli­gat­ed to de­fend her.

State Farm also moved for summary judg­ment in June 1998.  State Farm argued Pekin was pri­mar­i­ly obli­gat­ed to de­fend Saylor re­gard­less of the lan­guage con­tained in Sullivan's policy.  In reach­ing this con­clu­sion, State Farm re­lied on the recent supreme court deci­sion in 
State Farm Mutu­al Auto­mo­bile In­sur­ance Co. v. Uni­ver­sal Un­der­writ­ers Group
, 182 Ill. 2d 240, 244, 695 N.E.2d 848, 850 (1998).  In August 1998, the circuit court denied Pekin's summa­ry judgment motion and grant­ed State Farm's motion.

II. ANALYSIS

On appeal, Pekin asserts the circuit court failed to con­sider the plain language of Sullivan's insur­ance policy.  Pekin contends insurance carriers are entitled to en­force provi­

sions as written (see 
Bruder v. Country Mutual Insurance Co.
, 156 Ill. 2d 179, 185-86, 620 N.E.2d 355, 359 (1993)), and this court should defer to the manner in which the parties have chosen to articu­late their obli­gations (see 
Madison Mutual Insurance Co. v. Universal Un­derwriters Group
, 251 Ill. App. 3d 13, 16, 621 N.E.2d 270, 272-73 (1993)).  Thus, Pekin argues it was not obligated to de­fend Saylor be­cause she did not qual­i­fy as an "in­sured."

State Farm asserts section 7-317 of the Illinois Safe­ty and Family Financial Responsi­bili­ty Law (Code) (625 ILCS 5/7-

317(b) (West 1996)) re­quires Sullivan to insure all its test-

drivers.  As a re­sult, State Farm ar­gues Pekin must provide pri­

mary cover­age re­gard­less of the lan­guage contained in Sullivan's poli­cy.  See 
State Farm
, 182 Ill. 2d at 244-45, 695 N.E.2d at 850-51.  Accord­ingly, Pekin was pri­mari­ly obli­gated to defend Saylor.

Sum­mary judg­ment is prop­er when the pleadings, deposi­

tions, admis­sions, and affida­vits fail to estab­lish a genu­ine issue of mate­rial fact.  735 ILCS 5/2-1005(c) (West 1996).  The con­struction of insurance policy provisions is a ques­tion of law (
Out­board Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992)), which is re­viewed 
de
 
novo
 (
Federal De­posit Insurance Corp. v. O'Malley
, 163 Ill. 2d 130, 142, 643 N.E.2d 825, 831 (1994)).

In 
State Farm
, Joyce Pontiac (Joyce), a car deal­er­ship, allowed Rodney Luckhart to test-drive one of its vehicles.  Dur­

ing the test-drive, Luckhart was in­volved in a two-car acci­dent.  Luckhart had auto­mo­bile lia­bili­ty insurance with State Farm.  State Farm set­tled all claims against Luckhart, then sued Joyce's in­sur­er, Uni­ver­sal Un­der­writ­ers Group (Univer­sal), for reimburse­

ment.  According to Joyce's poli­cy, an in­sured was any per­son re­

quired by law to be in­sured while test-driv­ing one of its vehi­

cles.  The cir­cuit court grant­ed State Farm's sum­mary judg­ment motion.  The ap­pel­late court affirmed (
State Farm Mutual Automo­

bile Insurance Co. v. Universal Underwriters Group
, 285 Ill. App. 3d 115, 674 N.E.2d 52 (1996)).

In affirming the appellate court, the su­preme court utilized section 7-317(b) of the Code, which provides:

"7-317  'Motor vehicle liability policy' defined.  * * *

(b)  Owner's Policy.  Such owner's poli­

cy of lia­bility insurance:

1.  Shall designate *** all motor vehi­cles with respect to which cov­erage is there­

by in­tended to be granted;

2.  Shall insure the person named there­

in and 
any
 
other
 
per­son
 
using
 
or
 
respon­sible
 
for
 
the
 
use
 
of
 
such
 
motor
 
vehi­cle
 
or
 
vehicles
 
with
 
the
 
ex­press
 
or
 
im­plied
 
per­mis­sion
 
of
 
the
 
in­sured
."  (Empha­sis add­ed.)  625 ILCS 5/7-

317(b) (West 1996).

The court concluded section 7-317(b) mandates an owner's auto­mo­

bile in­sur­ance poli­cy cover any per­son using the vehi­cle with the named insured's per­mis­sion.  Therefore, because Joyce was re

quired to insure Luckhart, the court held Luckhart qualified as an "in­sured" according to the terms of Universal's poli­cy.  See 
State Farm
, 182 Ill. 2d at 244, 695 N.E.2d at 850.

The 
State Farm
 court extended its holding, stating when an in­sur­ance poli­cy fails to in­clude an omni­bus clause providing cov­er­age to per­sons who are permitted to use the name insured's vehi­cle, "such a clause must be read into every such poli­cy."  
State Farm
, 182 Ill. 2d at 244, 695 N.E.2d 850.  In concluding Univer­sal was primar­ily liable, the court stat­ed sec­tion 7-317 of the Code "must be con­strued to re­quire pri­mary cov­er­age."  
State Farm
, 182 Ill. 2d at 246, 695 N.E.2d at 851.

Pekin argues the 
State Farm
 decision does not control this case because the supreme court was not deciding which insur­

ance company should provide primary coverage.  Instead, Pekin asserts the 
State Farm
 court decided whether Luckhart was an "in­

sured" under the terms contained in Joyce's insurance poli­cy,  whereas here the lan­guage con­tained in Sullivan's poli­cy explic­

itly ex­clud­ed Saylor from cov­er­age.  Pekin also notes the Code fails to indi­cate which in­surer must provide pri­ma­ry cover­age.

Contrary to Pekin's argument, we find 
State Farm
 con­

trolling.  The only dis­tinc­tion be­tween this case and 
State Farm
 relates to the language in Sullivan's in­sur­ance poli­cy ex­clud­ing Saylor from cov­erage.  However, this lan­guage cannot be en­forced because it con­tra­dicts the mandato­ry language of sec­tion 7-317(b) of the Code (see 625 ILCS 7-317(b) (West 1996)).  Sullivan's policy must insure Saylor re­gardless of the language con­tained there­in.  See 
State Farm
, 182 Ill. 2d at 244, 695 N.E.2d at 850.  Thus, similar to 
State Farm
, we are left to de­cide whether State Farm or Pekin is primarily obli­gat­ed.

As noted in 
State Farm
, pri­ma­ry lia­bil­i­ty is gen­eral­ly placed on the in­sur­er of the owner of an automo­bile rather than the insur­er of the driver.  See 
State Farm
, 182 Ill. 2d at 246, 695 N.E.2d at 851, citing 7A Am. Jur. 2d 
Auto­mo­bile In­sur­ance
 

§543 (1997).  While we agree the terms of Sullivan's insur­ance policy were con­sis­tent with the legislature's intent "to secure the solvency of those operating vehicles on public high­ways" (see 
Springfield Fire & Casualty Co. v. Garner
, 255 Ill. App. 3d 685, 692, 627 N.E.2d 1147, 1151-52 (1993)), the su­preme court de­ter­

mined public policy was best served by re­quir­ing the automo­bile owner's insurer provide prima­ry cov­erage to any person per­mitted by the owner to use the vehicle (see 
State Farm
, 182 Ill. 2d at 245, 695 N.E.2d at 851).  Thus, an automobile dealer's insur­ance poli­cy must pro­vide pri­mary cov­er­age for its test-driv­ers.

III. CONCLUSION

For the reasons stated, the circuit court's judgment is affirmed.

Affirmed.

STEIGMANN and MYERSCOUGH, JJ., concur.