THIRD DIVISION
March 31, 2010

No. 1-08-0402

AMERICAN SERVICE INSURANCE            )
COMPANY,                              )      APPEAL FROM THE
    Plaintiff-Appellant and Cross-Appellee,   )      CIRCUIT COURT OF
                                      )      COOK COUNTY
        v.                           )
                                      )
ARTHUR JONES, RAMOS MOVERS, INC.,     )
JOSE G. TORRES,                       )      No. 05 CH 5359
    Defendants-Appellees        )
                                      )
(Elite Rental, Inc., and National Casualty   )
Company,                              )
    Defendants-Appellees and    )
    Cross-Appellants;           )      HONORABLE
                                      )      MARY ANNE MASON,
State Farm Mutual Insurance Company,  )      JUDGE PRESIDING.
    Defendant).                 )

JUSTICE STEELE delivered the opinion of the court:

In this declaratory judgment action, plaintiff American Service Insurance Company (ASI)

appeals an order of the circuit court of Cook County granting summary judgment to defendants

Elite Rental, Inc. (Elite), National Casualty Company (National), Ramos Movers, Inc. (Ramos),

and Jose G. Torres (Torres) on count II of ASI's complaint, ruling that ASI provided primary

coverage and was obligated to defend Ramos in an underlying automobile collision suit, while

National's policy provided excess coverage. National and Elite cross-appeal from the circuit

court's ruling on their counterclaim, granting summary judgment to ASI and Torres and declaring

that National's policy provides $1 million of coverage.[1]

---

[1] Defendant State Farm Mutual Insurance Company, which insured Torres, is not a party

to this appeal.

BACKGROUND

The record on appeal discloses the following facts. Ramos is a moving company that owned two trucks for personal moving services. On October 5, 2004, defendant Arthur Jones (Jones) rented a truck from Elite on behalf of Ramos to complete a scheduled move that day from Crystal Lake, Illinois, to Crown Point, Indiana. En route, Jones was involved in a collision with Torres, while still in Illinois, resulting in injuries to Torres.

Since 1995, the Illinois Commerce Commission (ILCC) had issued a public carrier certificate and certificate of public convenience and necessity to Ramos, granting Ramos the authority to operate as a common carrier of household goods between points within a 50-mile radius of Chicago, Illinois, and as a common carrier of other goods to and from points in Illinois.

In 2003, Ramos applied to ASI for truck insurance. The application describes Ramos as a local household furnishings mover. The application listed a truck and a van, each located in Chicago, Illinois, with an operating radius of 50 miles.

ASI insured Ramos under a general liability policy, listing Ramos's two trucks as covered vehicles. The ASI policy included a single, combined limit for bodily injury and property damage of $750,000. The policy provides:

"COVERAGE A – BODILY INJURY LIABILITY

***

ADDITIONAL CONDITIONS

1. Other Insurance. Temporary Substitute and Newly Acquired Vehicles

With respect to a Temporary Substitute automobile, this insurance

shall be excess insurance over any other valid and collectible insurance available to the insured.

\*\*\*

COVERAGE B – PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums, except for punitive

or exemplary damages, which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an accident and arising out of the ownership, maintenance or use of an owned vehicle or any temporary substitute automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy."

The ASI policy defines a "temporary substitute automobile" as:

"[A] vehicle not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned vehicle when withdrawn from normal use for servicing or repair or because of its breakdown, loss or distruction [sic]."

ASI's policy was certified with the ILCC in compliance with Illinois law and as proof of

financial responsibility under the rules for carriers of property. ASI's policy further provides:

"When this policy is certified as proof of financial responsibility under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy *** shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law."

Moreover, ASI's policy provides:

"The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of other insurance."

National insured Elite under a commercial automobile liability policy, listing Elite's rental vehicles as insured vehicles. National's policy defines "insureds" to include anyone using a covered auto Elite owns, or hires or borrows with Elite's permission. A symbol endorsement to the National policy defined symbol "10" automobiles as:

"Any auto used under a written rental agreement, issued by you, stating a rental period of less than one year. Any auto used in your rental business, or used for non business purposes with your permission."

The National policy provides coverage to symbol "10" automobiles up to $1 million per occurrence.

Another National endorsement – the "Daily Auto Rental Endorsement" – amended the definition of an insured to include:

"The 'rentee' and any other person authorized by and designated in the 'rental agreement' held by the 'rentee,' subject to all conditions set forth in this endorsement."

A "rentee" is defined as "a holder of a 'rental agreement' " with Elite "of less than one year." This endorsement limits liability for rentees to $50,000 for bodily injury to any one person in one accident, $100,000 for bodily injury to two or more people in one accident, and $50,000 for property damage in any one accident.

The "Daily Auto Rental Endorsement" further replaces the general "other insurance" condition to provide:

"For any covered 'auto,' the insurance provided by this policy is primary, unless stated otherwise in the 'rental agreement,' for the 'rentee' and any other person authorized by the 'rental agreement' held by the 'rentee.' "

The rental agreement between Elite and Jones provides in part:

"Rentor provides liability coverage to persons using the vehicle with the permission of the Rentor *** in accordance with the provisions of an automobile liability insurance policy with limits equals [sic] to the minimum requirements of any applicable state financial responsibility law or other similar law or statue [sic]. All coverages under this Agreement are applicable only after all other valid and collectible insurance (whether primary, excess or contingent) has been paid and exhausted to the full limits of all such policies."

ASI and National filed declaratory judgment actions in the circuit court of Cook County, seeking a determination of their respective rights and obligations. ASI asked the court to find that its policy did not cover Ramos or Jones because the rental vehicle was not an insured automobile under the policy, or that National's policy provided primary coverage and that the ASI policy provided excess coverage. Ramos filed a counterclaim, which he nonsuited prior to this appeal. National and Elite also filed a counterclaim seeking declarations that: (1) National did not owe a duty to defend Ramos; (2) ASI provided primary coverage; (3) Elite was an additional insured under the ASI policy[2]; and (4) if National's policy applies, it was limited to $50,000 of excess coverage.

On July 24, 2006, ASI moved for summary judgment on count II of its complaint, arguing that National's coverage was primary and ASI's coverage – if any – was excess. On June 19, 2007, Torres filed a motion for summary judgment arguing that the ASI policy provided primary coverage to Ramos. The same day, Torres filed a motion for partial summary judgment against National and Elite, arguing that: (1) the rented truck was a covered auto with $1 million in liability coverage under the National policy; and (2) Ramos was an insured under the National policy. That same day Ramos moved for summary judgment, arguing that: (1) ASI's suit breached the terms of its own policy and the financial responsibility laws of Illinois; and (2) ASI acted in bad faith during the litigation and fraudulently induced Ramos to make statements in an

---

[2] National and Elite abandoned this claim during briefing on the summary judgment motions before the trial court.

attempt to deny him coverage. On June 29, 2007, National and Elite filed a joint motion for summary judgment arguing that: (1) National's coverage was subjected to the $50,000 limits; (2) National's coverage was excess to the ASI policy; and (3) Elite is an additional insured under the ASI policy. National and Elite also filed a cross-motion for summary judgment against ASI, contending that: (1) the ASI policy must provide coverage in order to comply with the financial responsibility laws of Illinois; and (2) Elite owed neither Torres nor the public a corresponding duty to provide primary coverage in this case.

On December 14, 2007, the circuit court issued a memorandum opinion and order, disposing of the summary judgment motions. The circuit court first ruled that ASI's argument that the Elite truck was not a "temporary substitute vehicle" failed because the financial responsibility laws of Illinois require that a carrier's insurance must cover any vehicle operated under the authority of that carrier, whether or not the vehicle has been reported to the insurer. The circuit court then ruled that the ASI policy provided primary coverage, because allowing ASI to provide only excess coverage would violate the public policy of Illinois as established by the financial responsibility laws of Illinois. The circuit court further ruled that National's policy was ambiguous, resulting in an available limit of $1 million. Finally, the court denied Ramos's motion for summary judgment, on the ground that the motion failed to identify the claims asserted or the elements thereof, as well as why the undisputed material facts compelled judgment as a matter of law in his favor.

On January 10, 2008, the circuit court denied ASI's motion to reconsider. On January 24, 2008, the circuit court denied National and Elite's motions to reconsider and found no just reason

1-08-0402

to delay enforcement or appeal of the December 14, 2007, order, pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). On February 6, 2008, ASI filed an amended notice of appeal to this court. On February 8, 2008, National and Elite filed a notice of cross-appeal to this court.

## DISCUSSION

The primary issue on appeal is whether the circuit court erred in granting summary judgments to National, Elite and Torres (ruling the ASI policy provided primary coverage) and also to Torres (ruling the National policy provided up to $1 million of excess coverage). Appellate review of a summary judgment ruling is de novo. Arangold Corp. v. Zehnder, 204 Ill. 2d 142, 146, 787 N.E.2d 786, 789 (2003). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). The interpretation of an insurance policy and the coverage provided are questions of law that are appropriate for resolution through summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993).

## I

ASI first argues that the trial court erred in ruling that its policy provided primary coverage. The circuit court ruled that ASI's policy provided primary insurance, rejecting ASI's assertion that the truck rented from Elite was not covered by ASI's policy (or if it was covered, that the policy was excess), because this assertion violated public policy as established by Illinois

-8-

law. See Progressive Universal Insurance Co. v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 129, 828 N.E.2d 1175, 1180 (2005). The circuit court relied on sections 18c-4901 and 18c-4903 of the Illinois Commercial Transportation Law (Transportation Act) (625 ILCS 5/18c-4901, 18c-4903 (West 2006)). Section 18c-4901 provides:

"No motor carrier of property shall operate within this State unless it has on file with the [Illinois Commerce] Commission or its agent proof of continuous insurance or surety coverage in accordance with Commission regulations."

Section 18c-4903 provides:

"Each certificate or other proof of insurance or surety coverage shall have, as an implied term, that *** all motor vehicles operated by or under authority of the carrier will be covered, whether or not such vehicles have been reported to the insurance, surety, or other company." 625 ILCS 5/18c-4903 (West 2006).

Accordingly, the circuit court rejected ASI's argument that the truck at issue was not covered by its policy.

ASI argues that the requirements of the Transportation Act do not apply in this case because the rented truck was being used for interstate commerce. ASI relies on Canal Insurance v. A&R Transportation & Warehouse, LLC, 357 Ill. App. 3d 305, 312-13, 827 N.E.2d 942, 948 (2005), a case involving interstate commerce:

"Section 18c-1201 of the Transportation Act specifically states that the jurisdiction of the Illinois Commerce Commission 'shall extend to for-hire transportation by motor carrier *** within the State of Illinois, and except as otherwise provided

elsewhere in this Chapter <u>shall extend only to intrastate commerce</u>.' (Emphasis added.) 625 ILCS 5/18c-1201 (West 2002). It is undisputed that, at the time of the occurrence alleged in the underlying action, Boyd was hauling a load of refrigerated freight for A&R from Illinois to Pennsylvania. As a consequence, Boyd was engaged in 'interstate commerce' (see 625 ILCS 5/18c-1104(16) (West 2002)), and the provisions of the Transportation Act upon which he relies are inapplicable to the occurrence alleged in the underlying action. As such, they do not give rise to any obligation on the part of Canal to provide coverage under the Policy for any vehicle which is not described in the declarations or listed in Endorsement E69L."

Canal Insurance is distinguishable from this case. That appeal involved an interpretation of section 18c-1201 of the Transportation Act and did not discuss the applicability of other sections. Section 18c-1201, by its own terms, applies, "except as otherwise provided elsewhere in this Chapter." 625 ILCS 5/18c-1201 (West 2006). Moreover, it is well settled that where two statutory provisions cover the same subject matter, the more specific statute governs. <u>Huskey v. Board of Managers of Condominiums of Edelweiss, Inc.</u>, 297 Ill. App. 3d 292, 295, 696 N.E.2d 753, 755 (1998). Section 18c-1201 of the Transportation Act sets forth the general jurisdiction of the ILCC, while section 18c-4101 of the Transportation Act specifically addresses the ILCC's jurisdiction over motor carriers of property:

"Except as provided in Section 18c-4102 of this Chapter, the jurisdiction of the Commission shall extend to all motor carriers of property operating within the State of Illinois." 625 ILCS 5/18c-4101 (West 2006).

The exceptions referenced in section 18c-4101 do not apply to this case. See 625 ILCS 5/18c-4102 (West 2006). Accordingly, under sections 18c-4901 and 18c-4903, the jurisdiction of the ILCC is not limited solely to intrastate commerce.

Indeed, the ILCC's grant of authority to Ramos to operate in a zone surrounding Chicago – with the required insurance – complements the federal Motor Carrier Act of 1980, which provides for only limited federal jurisdiction over transportation provided "in a zone that is adjacent to, and commercially a part of" a municipality. 49 U.S.C. §13506(b)(1) (2006). Nor does it seem coincidental that the ILCC requires that the insurance submitted to satisfy our financial responsibility laws have the same minimum amounts of coverage required by the federal Department of Transportation for carriers involved in interstate commerce. 92 Ill. Adm. Code §1425.30, amended at 18 Ill. Reg. 11162, 11165-66, eff. July 1, 1994; see Zurich American Insurance Co. v. Key Cartage, Inc., 236 Ill. 2d 117, 130, 923 N.E.2d 710, 717 (2009) (Garman, J., specially concurring). Thus, this is not a case raising constitutional issues involving the regulation of interstate commerce and federalism. Rather, it is a situation in which federal and state authorities – both anticipating that the real world business of motor carriers of property does not always neatly fall into the categories of intrastate and interstate commerce – are operating cooperatively to protect the public.

This overall scheme helps explain why Canal Insurance is also factually distinguishable. Canal Insurance involved transporting freight from Illinois to Pennsylvania. In this case, Ramos was driving a truck between Crystal Lake, Illinois, and Crown Point, Indiana. Ramos had insurance from ASI for trucks expected to operate within a 50-mile radius of Chicago. Based on

the ASI policy, the ILCC granted Ramos the authority to operate as a common carrier of household goods between points within a 50-mile radius of Chicago, Illinois. ASI does not dispute that both Crystal Lake, Illinois, and Crown Point, Indiana, fall within the 50-mile radius authorized by the ILCC and contemplated by the ASI policy. ASI's argument, if accepted, would frustrate the purpose of the Transportation Act that motor carriers of property carry insurance co-extensive with the scope of their operations, for the protection of the public.

ASI also cites Bisco v. Liberty Mutual Insurance Co., 176 Ill. App. 3d 280, 530 N.E.2d 1163 (1988). In that case, this court interpreted section 18c-4901 and concluded that while the United Parcel Service van at issue might usually be driven within the scope of the Transportation Act, the van fell outside the scope of that law while being driven to an autobody shop by a shop employee. Bisco, 176 Ill. App. 3d at 283, 530 N.E.2d at 1164. See also 625 ILCS 5/18c-4102 (West 2006) (exempting incidental use of a vehicle for a primary business purpose other than transportation). In this case, the cartage of household goods falls directly within the activities regulated by the Transportation Act. 625 ILCS 5/18c-4101 (West 2006).

For all of the aforementioned reasons, we conclude that the trial court did not err in ruling that the ASI policy provides coverage in this case.

II

We next turn to the question of whether ASI's policy provides primary coverage in this case. The circuit court relied on the rule that where two policies purport to be excess, and one provision violates public policy, the contract violating public policy will be deemed primary. Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co., 357 Ill. App. 3d 891, 901, 830 N.E.2d

10, 18 (2005). ASI argues that its policy is not primary, contending: (1) generally, where two insurance policies each purport to offer only secondary coverage, the insurance of the vehicle's owner is primary while that of the driver is secondary; and (2) section 9-105 of the Illinois Vehicle Code (625 ILCS 5/9-105 (West 2006)) required Elite to provide an operator's policy. The circuit court rejected these arguments, relying on this court's opinion in State Farm Mutual Automobile Insurance Co. v. Hertz Claim Management Corp., 338 Ill. App. 3d 712, 789 N.E.2d 407 (2003), which we quote at length for its detailed discussion of the issue:

"Section 7-601(a) of the Illinois Vehicle Code provides that no one may operate a motor vehicle or allow a vehicle to be operated without obtaining sufficient insurance. 625 ILCS 5/7-601(a) (West 2000). For most vehicles, section 7-203 requires that the policy limits must be at least $20,000 per person or $40,000 per accident for personal injury or death and at least $15,000 for property damage. 625 ILCS 5/7-601(a), 7-203 (West 2000). Section 7-317(b)(2) requires that the insurance must cover any person driving the insured vehicle with the express or implied permission of the insured. 625 ILCS 5/7-317(b)(2) (West 2000). Such coverage is commonly referred to as 'omnibus coverage.' If the policy does not expressly provide omnibus coverage, it will be interpreted as providing it. State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group, 182 Ill. 2d 240, 244, 695 N.E.2d 848, 850 (1998) (where omnibus clauses are required by statute, such a clause must be read into each insurance policy).

Among the vehicles exempted from the requirements of section 7-601(a) are those in compliance with other statutes that require insurance in amounts meeting or exceeding

-13-

those required by section 7-601(a). 625 ILCS 5/7-601(b)(6) (West 2000). The Illinois Supreme Court has held that this exception applies only if the other statute requires coverage of the type mandated by section 7-601(a). Universal Underwriters Group, 182 Ill. 2d at 245, 695 N.E.2d at 851. Section 9-101 of the Illinois Vehicle Code requires the owners of rental vehicles to provide proof of financial responsibility to the Secretary of State. 625 ILCS 5/9-101 (West 2000). Financial responsibility may be in the form of a bond, an insurance policy, or a certificate of self-insurance. 625 ILCS 5/9-102 (West 2000). If the owner of the rental car opts to provide an insurance policy, as Ford has done in the instant case, it must provide coverage with limits of at least $50,000 per person for bodily injury or death or $100,000 per accident for bodily injury or death and property damage. The policy must cover any driver using the car with the insured's express or implied permission. 625 ILCS 5/9-105 (West 2000). Because the rental car insurance law requires rental cars to be insured in amounts exceeding those required by sections 7-601(a) and 7-203 and contains an omnibus clause identical to that found in section 7-317(b)(2), we find that rental cars fall within the exception provided by section 7-601(b)(6).

Section 7-317 and section 9-105 are silent on which insurer is to provide primary coverage where the driver and the vehicle are covered by different policies. 625 ILCS 5/7-317, 9-105 (West 2000). However, the Illinois Supreme Court has stated that, absent statutory language to the contrary, the omnibus clause found in section 7-317(b)(2) 'must be construed to require primary coverage.' Universal Underwriters Group, 182 Ill. 2d at

246, 695 N.E.2d at 851. We note that the two omnibus clauses serve the same purpose and contain nearly identical language. For the reasons which follow, however, we conclude, as have the other Illinois appellate courts to consider the issue, that section 9-105 does not require a rental car agency to provide primary insurance as long as such coverage is available from another source.

The purpose of the omnibus provisions is to protect the public by ensuring that adequate resources are available to compensate for injuries sustained as a result of automobile accidents. Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co., 152 Ill. App. 3d 225, 232, 504 N.E.2d 256, 261 (1987). Their purpose is the protection of the public, not other insurance agencies. Continental Casualty Co. v. Travelers Insurance Co., 84 Ill. App. 2d 200, 204, 228 N.E.2d 141, 144 (1967). In general, where two insurance policies each purport to offer only secondary coverage, the insurance of the vehicle's owner is primary while that of the driver is secondary. Dotson v. Agency Rent-A-Car, Inc., 101 Ill. App. 3d 804, 807, 428 N.E.2d 1002, 1004 (1981). However, the Illinois courts that have considered this question in the unique context of rental cars have concluded that the general rule does not apply. Farm Bureau Mutual Insurance Co., 319 Ill. App. 3d at 389, 744 N.E.2d at 305; Insurance Car Rentals, Inc., 152 Ill. App. 3d at 234, 504 N.E.2d at 262; Dotson, 101 Ill. App. 3d at 808, 428 N.E.2d at 1005. This is so because the public policy at stake is not frustrated by departing from the general rule. Farm Bureau Mutual Insurance Co., 319 Ill. App. 3d at 389, 744 N.E.2d at 305; Insurance Car Rentals, Inc., 152 Ill. App. 3d at 234, 504 N.E.2d at 262.

In Insurance Car Rentals, Inc., as here, a driver rented a car for use while his car was being repaired. Insurance Car Rentals, Inc., 152 Ill. App. 3d at 227, 504 N.E.2d at 258. As here, the car rental agency offered him a choice between relying on his insurance company to provide primary coverage or paying a higher cost in order to be provided with full coverage through the rental agency's insurer. The driver opted for the former option. Insurance Car Rentals, Inc., 152 Ill. App. 3d at 228, 504 N.E.2d at 258. The Third District Appellate Court found that the car rental agency fulfilled the purpose of protecting the public because it 'did provide a means for obtaining insurance if a customer chose to use [its] insurance.' Insurance Car Rentals, Inc., 152 Ill. App. 3d at 232, 504 N.E.2d at 261. In so holding, the court emphasized that there were two separate agreements the driver could have entered into with the rental car agency. Had he chosen to purchase insurance through the agency's insurer, he would have had to sign a different form, which was a different color. Moreover, the cost of renting the car would have been higher. Insurance Car Rentals, Inc., 152 Ill. App. 3d at 232, 504 N.E.2d at 261. Thus, the court reasoned, the agency protected 'those who would otherwise be uninsured.' Insurance Car Rentals, Inc., 152 Ill. App. 3d at 232, 504 N.E.2d at 261.

Similarly, in the case at bar, Auffenberg offered Kauling the option of purchasing the liability insurance supplement and enjoying full primary coverage under the defendants' policies. As in Insurance Car Rentals, Inc., the rental agreement between Auffenberg and Kauling made it unmistakable to Kauling that he was declining such full coverage. The supplement had to be purchased at an additional price. The rental contract

contained paragraphs both on the front and on the reverse explaining that by not purchasing the supplement, the driver was relying on his own insurance to provide primary coverage. The paragraph was highlighted on the front of the contract and preceded by the words 'NOTICE: Please read the following carefully' printed in bold typeface. In addition, the rental agreement contained a space for Kauling to place his initials indicating whether he accepted or declined the liability supplement. Thus, Auffenberg provides insurance to drivers who otherwise might not be covered while renting its cars. It also protects drivers from inadvertently declining coverage they need or prefer. We find that these measures adequately protect the public." Hertz Claim Management Corp., 338 Ill. App. 3d at 715-18, 789 N.E.2d at 41-12.

ASI argues that Hertz Claim Management Corp. is distinguishable, because Elite did not provide separate agreements and did not provide Jones with an option to provide primary insurance to Ramos. National replies that Hertz Claim Management Corp. is not distinguishable, because Elite automatically provided National's insurance coverage, albeit excess, to its customers, thereby satisfying the underlying public policy. Torres takes the position that whether Elite provided or offered to provide insurance to Ramos is irrelevant, arguing that Ramos chose to rely on its own primary coverage and that the public policy reasons for an exception to the general rule remain.

The rationale of cases like Hertz Claim Management Corp. is that the rental car exception is justified precisely because the rental agency is required to offer insurance to the driver who otherwise might not be covered, protecting the driver from inadvertently declining coverage he or

she needs or prefers and thereby satisfying the demands of Illinois public policy. However, as Elite failed to offer primary insurance to Ramos, it cannot be said that Ramos chose to rely on its own insurance; thus, the general rule that the insurance of the vehicle's owner is primary applies. If Elite's automatic excess coverage was deemed sufficient, it would swallow the case law holding that a rental agency must offer the choice of primary coverage to the customer to escape the general rule that where two insurance policies each purport to offer only secondary coverage, the insurance of the vehicle's owner is primary while that of the driver is secondary.

Accordingly, we agree with ASI that National's policy provides primary coverage for public policy reasons, because Elite failed to offer Ramos the choice of primary coverage. However, that conclusion does not preclude us from also agreeing with the circuit court's conclusion that the ASI policy provides primary coverage pursuant to sections 18c-4901 and 18c-4903 of the Transportation Act. 625 ILCS 5/18c-4901, 18c-4903 (West 2006). Where two primary policies both contain "other insurance" clauses stating that the coverage provided is "excess," we must conclude that the two "excess" clauses cancel each other out, and any loss is prorated between the policies. See, e.g., Ohio Casualty Insurance Co. v. Oak Builders, Inc., 373 Ill. App. 3d 997, 1000-04, 869 N.E.2d 992, 994-97 (2007) (and cases cited therein).

III

ASI, National and Elite all take issue with the trial court's declaratory ruling that the National policy provided up to $1 million of excess coverage, albeit for different reasons. ASI argues that the issue was not ripe for decision. National and Elite argue that the National policy was not ambiguous.

"To maintain a declaratory judgment action, there must be an actual controversy between the parties capable of being affected by a determination of the case." Weber v. St. Paul Fire & Marine Insurance Co., 251 Ill. App. 3d 371, 372, 622 N.E.2d 66, 67 (1993). Whether an action is considered "premature" or unripe for adjudication focuses on an evaluation of the fitness of the issue for judicial decision at that point in time. Weber, 251 Ill. App. 3d at 372-73, 622 N.E.2d at 67.

ASI argues that the issue of policy limits is not ripe for adjudication, because it is integrally related to the merits of the underlying suit of liability. See, e.g., Certain Underwriters at Lloyd's, London v. Boeing Co., 385 Ill. App. 3d 23, 41-45, 895 N.E.2d 940, 956-59 (2008). The circuit court had ruled to the contrary, based on Scottsdale Insurance Co. v. Robertson, 338 Ill. App. 3d 397, 398-99, 788 N.E.2d 279, 280 (2003). ASI notes that the insurer in Robertson had already acknowledged its policy applied to the underlying claim; the parties merely disputed the policy limits. Robertson, 338 Ill. App. 3d at 398-99, 788 N.E.2d at 280. Such is not the case here. However, given our conclusion that the National policy provides primary coverage, the issue is not premature.

The circuit court relied on the well-established rule that if the terms of an insurance policy are susceptible to more than one meaning, they are considered ambiguous and will be construed strictly against the insurer that drafted the policy. American States Insurance Co. v. Koloms, 177 Ill. 2d 473, 479, 687 N.E.2d 72, 75 (1997). The circuit court ruled that the National policy was ambiguous because the rental endorsement and the symbol endorsement both purported to apply to vehicles rented under an agreement with a term of less than one year, but at

two different policy limits. National's argument that the symbol endorsement applied to a subcategory of the vehicles used in its business operations is unpersuasive, given that Elite's business is renting trucks. Accordingly, the circuit court correctly determined that the National policy provided up to $1 million of coverage, though it does so on a primary basis, as noted earlier.

IV

Finally, ASI argues that the circuit court erred in denying ASI's motion for leave to file an amended complaint and denied certain discovery. However, the circuit court did not decide these issues in its December 14, 2007, order, and they are not implicated by the notice of appeal or notice of cross-appeal. Thus, this court lacks jurisdiction to consider these questions at this time. See, e.g., Neiman v. Economy Preferred Insurance Co., 357 Ill. App. 3d 786, 790-91, 829 N.E.2d 907, 911 (2005) (and cases cited therein).

CONCLUSION

In sum, we affirm the circuit court's ruling that the ASI policy provides coverage in this case. We also affirm the circuit court's ruling that ASI provided primary coverage in this case. However, we conclude that the National policy also provided primary coverage, and that any loss and costs of defense are to be prorated between the policies. Finally, we affirm the circuit court's ruling that the National policy is ambiguous and, thus, provides up to $1 million of coverage.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Affirmed as modified.

MURPHY, P.J., and QUINN, J., concur.